```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
GEORGE BENN,                                                 :
                                                             :
                            Plaintiff,                       :    18-CV-722 (LGS) (OTW)
                                                             :
                -against-                                    :    **MEMORANDUM OPINION & ORDER**
                                                             :
THE CITY OF NEW YORK, et al.,                                :
                                                             :
                            Defendants.                      :
                                                             :
-------------------------------------------------------------x
```

**ONA T. WANG, United States Magistrate Judge:**

Plaintiff filed a Motion to Compel seeking enforcement of a subpoena *duces tecum* served on non-party New York County District Attorney's Office ("DANY"). (ECF 102).[1] Although Plaintiff received a number of documents from DANY, Plaintiff's subpoena is directed toward categories of documents initially withheld by DANY on grounds of privilege and confidentiality. (ECF 102). For the reasons below, Plaintiff's Motion is **GRANTED** in part and **DENIED** in part.

I. <u>Background</u>

Plaintiff sued Defendants City of New York, individual corrections officers, and individual New York Police Department ("NYPD") officers (collectively "Defendants") for claims of, *inter alia*, malicious prosecution, due process violations, and excessive force stemming from his

---

[1] Plaintiff initially filed his brief on January 22, 2019, generating the message "FILING ERROR – WRONG EVENT TYPE SELECTED FROM MENU" because he incorrectly filed his memorandum of law as a motion. (ECF 98). After the ECF system prompted Plaintiff to re-file, Plaintiff re-filed his memorandum of law on February 12, 2019 without filing a motion. (ECF 102). Although Plaintiff's February 12 filing was also incorrectly filed - as a memorandum in support of a motion to seal - the contents of the brief show that it was a re-filing of the memorandum of law in support of the motion to compel. The only difference between ECF 98 and ECF 102 is the addition of Exhibit G, which Plaintiff apparently had forgotten to file with the initial brief. (*See* ECF 98 (attaching Exhibits A-M while omitting an Exhibit G)). Notwithstanding Plaintiff's multiple filing errors, the Court will treat ECF 102 as the operative motion to compel.

arrest for the murder of Willis Bennet and assault of Jawuan Faust. (Complaint ("Compl.") (ECF 1) ¶¶ 15-41; ECF 102 at 1). Plaintiff alleges that the NYPD detectives assigned to his case fabricated evidence and withheld exculpatory evidence. (Compl. ¶¶ 20-35). As a result, Plaintiff remained detained in prison for over three years, after which he was released and the charges were dropped. (Compl. ¶¶ 39-40). Plaintiff further alleges that while he was in prison, corrections officers once employed excessive force on him when attempting to secure him. (Compl. ¶¶ 42-47).

On June 15, 2018, DANY sent 773 pages of documents to the City regarding Plaintiff's criminal case. (ECF 73-1). In DANY's cover letter, it noted that it was withholding various categories of documents that were either privileged or "that some other legal restriction bars access." (*Id*.) Plaintiff subsequently requested that the Court issue a judicial subpoena so that Plaintiff could subsequently file a motion to compel for documents that DANY had chosen to not hand over to the City. (ECF 67). The subpoena to DANY, which was signed by Judge Woods and later served on DANY on August 28, 2018, requested documents "related to its investigation into the death of Willis Bennet," including the complete files of three criminal investigations, and documents "related to the investigation into the assault of Jawuan I. Faust." (ECF 98-11). Consistent with their letter to the City, DANY did not produce any additional documents in response to the subpoena and subsequently requested a protective order. (ECF 74).

This Court held a discovery conference on November 2, 2018, at which the Court directed Plaintiff and DANY to brief a motion to compel on whether the various categories of documents withheld by DANY should be produced, and if any specific objections of privilege or

confidentiality were proper. Nov. 2, 2018 Conf. Tr. (ECF 87) at 59:21-60:14. Before the Court is Plaintiff's subsequently-filed motion to compel.

II. **Legal Standard**

Federal Rule of Civil Procedure 26(b)(1) permits discovery of "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." The party moving to compel, here Plaintiff, "bears the initial burden of demonstrating relevance and proportionality." *See Winfield v. City of New York*, No. 15-CV-5236 (LTS) (KHP), 2018 WL 840085, at *3 (S.D.N.Y. Feb. 12, 2018). "Motions to compel and motions to quash a subpoena are both entrusted to the sound discretion of the court." *Howard v. City of New York*, No. 12-CV-933 (JMF), 2013 WL 174210, at *1 (S.D.N.Y. Jan. 16, 2013).

III. **Discussion**

a. **Cooperation and Proffer Agreements**

Plaintiff argues that cooperation and proffer agreements are relevant to his malicious prosecution claim to attack probable cause by showing that the witnesses had a "motive for bias." (ECF 102 at 6).[2] As Plaintiff acknowledges, a criminal indictment, as was issued here, creates a presumption of probable cause that can only be rebutted with evidence of "fraud, perjury, the suppression of evidence or other police conduct undertaken in bad faith." *See Colon v. City of New York*, 455 N.E.2d 1248, 1251 (N.Y. 1983). Therefore, the relevant evidence would be evidence tending to show bad faith police conduct, not whether witnesses *could* have

---

[2] A §1983 malicious prosecution claim must satisfy the elements of state law malicious prosecution, here New York's. *Manganiello*, 612 F.3d at 161. Under New York law, a malicious prosecution claim requires a showing of (1) a criminal proceeding against the plaintiff, (2) termination of the proceeding in the plaintiff's favor, (3) lack of probable cause for bringing the criminal proceeding, and (4) "actual malice" motivating the prosecution. *See Manganiello v. City of New York*, 612 F.3d 149, 161 (2d Cir. 2010).

3

been impeached. Under New York law, the presumption of probable cause from an indictment cannot be rebutted solely by a subsequent showing that probable cause did not exist. *See Colon*, 455 N.E.2d at 1251 (noting for a malicious prosecution claim, "the trial court may not weigh the evidence upon which the police acted or which was before the Grand Jury" but shall only look for bad faith). Accordingly, cooperation agreements and proffer agreements are not relevant to Plaintiff's claims and thus the request for them is **DENIED**.

### b. Witness Statements

Plaintiff next asserts that witness statements, both handwritten and video-recorded, may reveal what Defendants knew at the time they decided to prosecute Plaintiff, which is relevant to bad faith. (*Id*. at 7). Plaintiff alleges that Defendants withheld and falsified evidence, which would support the elements of lack of probable cause and malice. (*See* Compl. ¶¶ 61-64). To support his allegations that Defendants fabricated and misrepresented the evidence, Plaintiff would need to compare actual witness interviews with Defendants' produced summaries of those interviews. *See Goodloe v. City of New York*, 136 F. Supp.3d 283, 293 (E.D.N.Y. 2015). Therefore, cooperators' handwritten and video statements are relevant to Plaintiff's claims.

Even if relevant, however, DANY suggests that production of witness statements would not satisfy the proportionality prong of Rule 26 because of the applicability of the law enforcement privilege and work product protection. (ECF 105 at 8-9). Documents are protected under the law enforcement privilege if they contain information "that would endanger 'witness and law enforcement personnel . . . involved in an investigation." *See In re City of New York*, 607 F.3d 923, 944 (2d Cir. 2010) (quoting *In re Dept. of Investigation*, 856 F.2d 481, 484 (2d Cir.

4

1988)). The party claiming the privilege "bears the burden of showing that the privilege indeed applies to the documents at issue." *City of New York*, 607 F.3d at 948. DANY has not refuted, however, Plaintiff's claim that he already knows the identities of certain witnesses and has not argued that the disclosure of those witness statements would interfere with any investigation or compromise the witness's safety. *Cf. id*. at 944 (referring to reports containing detailed information about undercover operations); *Micillo v. Liddle & Robinson LLP*, No. 15-CV-6141 (JMF), 2016 WL 2997507, at *4-5 (S.D.N.Y. May 23, 2016) (requiring targeted showing of law enforcement privilege rather than a blanket claim). DANY only argues that Plaintiff should depose the witnesses first before being permitted access to the statements. (ECF 105 at 10). This general assertion of confidentiality fails to meet DANY's burden of showing the privilege should apply.

Nor does DANY explain how its second rationale for non-disclosure, attorney work-product protection, applies to witness statements. To the extent that Plaintiff is seeking attorney notes of the interviews, those notes would be protected from disclosure. DANY attempts to claim work product protection over the witness statements themselves by citing to *United States v. Zhu*, 77 F. Supp. 3d 327, 330-31 (S.D.N.Y. 2014) for the proposition that witness interviews can constitute work product. (ECF 105 at 10). *Zhu*, however, concerned a motion to compel the attorney's notes of the interview, not the transcript or video recording of the interview. *See Zhu*, 77 F. Supp. 3d at 329-330. Accordingly, DANY shall produce any witness statement, either in the form of interview transcripts or video recordings, taken in relation to prosecution of Plaintiff, but only for witnesses whose identities are already known to Plaintiff, as identified in ECF 102. If DANY believes that a particular witness statement implicates the law

5

enforcement privilege, DANY must promptly apply for a protective order for those specific document(s), submitting the document(s) for in-camera review and explaining why that document should be protected from disclosure.

   c. **Other Witness Identifying Documents**

DANY also withheld "material witness orders, writs of habeas corpus, expenses sheets, mugshot and prisoner pedigree cards, and confidential DANY investigatory reports" on the basis of privacy and protecting witnesses. (ECF 73-1 at 2). In his motion to compel, Plaintiff makes no attempt to assert the relevance of writs of habeas corpus, mugshot/pedigree cards, expense sheets, or material witness orders.[3] Accordingly, the request to compel these three categories of documents is **DENIED**.

Because neither side has briefed what "investigative reports" are and why they are relevant, Plaintiff's request to compel production of "DANY investigative reports" is **DENIED** without prejudice to renew if he can show that information in those reports is relevant to his claims and cannot be obtained elsewhere, *e.g.* through depositions or witness statements.

   d. **Attorney Work Product**

Plaintiff seeks "[h]andwritten attorney notes, drafts, lists, legal research, case memos, trial preparation materials, emails, the criminal court supervisor evaluation sheet, and calendar notes" that were initially withheld by DANY on the basis of confidentiality and attorney work product protection. (ECF 73-1 at 3; ECF 102 at 7). The Court already ruled at the November 2, 2018 conference that "[a]ttorney notes are work product, period." Nov. 2, 2018 Conf. Tr. at

---

[3] Plaintiff states in a footnote that *Zahrey v. Coffey*, 221 F.3d 342 (2d Cir. 2000) provides support for why expense sheets and ledgers are relevant. Plaintiff does not bother to explain what *Zahrey* says or discuss why *Zahrey*'s facts are applicable to this case. The Court will not make Plaintiff's arguments for him.

6

52:24. Although work product may be discoverable under a less stringent standard if it contains factual material that Plaintiff is otherwise unable to obtain, Plaintiff's only cited need for the documents is to discover facts gleaned from witness interviews. (ECF 102 at 9). Plaintiff does not explain why those same facts cannot be found in other non-work product documents, *e.g.*, witness interview statements, produced interview summaries, and depositions of those witnesses. *See* Fed. R. Civ. P. 26(b)(3)(A)(ii) (permitting work product discovery only where the party "has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means"); *Upjohn Co. v. U.S.*, 449 U.S. 383, 400 (1981). Because Plaintiff has not identified a substantial need for these attorney-produced documents or an inability to obtain a substantial equivalent, Plaintiff's request for this category of documents is **DENIED**.

   e. **Criminal Histories**

Plaintiff seeks production of "DCJS criminal histories ('rap sheets')" for the witnesses involved in the Faust and Bennet investigations.[4] (ECF 73-1 at 3; ECF 102 at 10). DANY argues that Plaintiff should request these documents from the NYPD directly, who are represented by Defendant City of New York. (ECF 105 at 11). Plaintiff served the NYPD with identical discovery requests, ECF 105 at 11 n. 4, but Plaintiff argues that DANY has documents unique to DANY. (ECF 110 at 7). For example, Plaintiff argues, if DANY printed the criminal history for a witness, the NYPD would not be in possession of that particular document.[5] (*Id.*)

At the outset, Plaintiff failed to satisfy his burden of showing relevance and

---

[4] Although DANY also included "CJA interview reports" in this category of documents, ECF 73-1 at 3, Plaintiff has now narrowed his request to only "disclosure of the DCJS criminal histories (rap sheets)." (ECF 102 at 10).
[5] Plaintiff fails to explain why Defendants would not be able to access that same database to provide an identical document.

7

proportionality. Similar to the requested cooperation agreements, Plaintiff argues that criminal histories are relevant to impeach the credibility of witnesses relied upon by Defendants. (ECF 102 at 10-11). As discussed above, a malicious prosecution claim looks to bad faith, not whether there were potential bases to dispute a finding of probable cause. *See Colon*, 455 N.E.2d at 1251. Plaintiff does not cite to any case law showing that reliance on a witness with a criminal history, which is not uncommon, renders such reliance unreasonable. *See Drummond v. Castro*, 522 F. Supp.2d 667, 677 (S.D.N.Y. 2007) (finding for a false arrest claim, the "possibility that the witness had an arrest record is not directly relevant to the credibility of his testimony"). Further, to the extent that Plaintiff needs to show bad faith by inquiring into how Defendants weighed the effect of the witnesses' criminal history on their credibility, Plaintiff can inquire into that at Defendants' depositions. Accordingly, Plaintiff's request for the witnesses' criminal histories is **DENIED**.

   f. **Facebook Records**

Plaintiff seeks to compel production of approximately 1,000 pages of records from his and his brother's Facebook accounts collected by DANY during its investigation of Plaintiff and his brother. (ECF 102 at 11). DANY initially withheld the documents because the Facebook records include "sensitive information of individuals unrelated to the case." (ECF 73-1 at 3; ECF 105 at 11). Plaintiff points out that DANY has not asserted a specific privilege[6] and that he requires the records to determine what evidence Defendants used to determine probable cause. (ECF 110 at 8).

---

[6] Although selection of particular portions of Facebook records may reveal the attorneys' strategy and thus qualify as attorney work product, *see Sporck v. Pell*, 759 F.2d 312, 316 (3d Cir. 1985), Defendants do not raise that objection here.

8

Plaintiff's only argument on relevance is that the Facebook records reveal what Defendants used to determine probable cause. (ECF 102 at 11). This argument has already been dealt with repeatedly above. Absent any suggestion that Defendants' use of Facebook records revealed bad faith, searching for independent bases to dispute the probable cause finding is not relevant to a malicious prosecution claim. *See Colon*, 455 N.E.2d at 1251 ("the trial court may not weigh the evidence upon which the police acted or which was before the Grand Jury"). The relevant inquiry is discovering Defendants' evaluation of the evidence to show bad faith, which would be accomplished through deposing Defendants. Plaintiff has not shown that Defendants' testimony, or anything else in the record, puts the Facebook records at issue. Since Plaintiff is already in possession of the Facebook records, his failure to articulate a more specific showing of relevance suggests none exist. (ECF 102 at 11 n. 23). Plaintiff's request for Facebook records is therefore **DENIED**.

   g. **Background Checks**

Included within the Facebook records category request, but actually its own distinct category, is a request for documents "resulting from background checks of defendants and witnesses, including domestic incident reports unrelated to the crime." (ECF 73-1 at 3). Plaintiff argues that this category of documents is relevant to impeaching the credibility of Defendants' witnesses and may be useful in uncovering potential *Brady* and *Giglio* violations.[7]

As an initial matter, it is not clear that Defendants' nondisclosure of evidence, if any, would rise to the level of a *Brady* or *Giglio* violation when Plaintiff never was brought to trial.

---

[7] A *Brady* violation is "suppression by the prosecution of evidence favorable to an accused upon request." *Brady v. Maryland*, 373 U.S. 83, 87 (1963). A *Giglio* violation is "nondisclosure of evidence affecting [the] credibility" of a key witness to the jury. *Giglio v. U.S.*, 405 U.S. 150, 154 (1972).

*See Kyles v. Whitley*, 514 U.S. 419, 433 (1995) (noting that a *Brady* violation looks to the impact of the evidence's omission on the verdict); *U.S. v. Mathur*, 624 F.3d 498, 506-07 (1st Cir. 2010) ("the right memorialized in *Brady* is a trial right"). Nor does Plaintiff provide any basis in the record to suggest that a *Brady* or *Giglio* violation occurred, only speculating that discovery may show a violation. (ECF 102 at 11-12). This type of "fishing expedition" is not sufficient to warrant discovery. *See Lemanik, S.A. v. McKinley Allsopp, Inc.*, 125 F.R.D. 602, 608 (S.D.N.Y. 1989) ("[I]t has long been the rule in this Circuit that 'the parties should not be permitted to roam in shadow zones of relevancy and to explore matter which does not presently appear germane on the theory that it might conceivably become so.'").

In regards to witness credibility, Plaintiff acknowledges that the relevancy is "credibility assessments made by defendants." (ECF 102 at 11). Similar to the discussion of impeachment evidence above, obtaining background checks would only provide Plaintiff a post-hoc evaluation of the witnesses' credibility. *See Colon*, 455 N.E.2d at 1251. Because Plaintiff has yet to depose Defendant or explained how the background checks would show bad faith, Plaintiff has failed to show how these documents are relevant to his claims. Accordingly, the request to compel production of documents "resulting from background checks" is **DENIED**.

### h. Phone Records

Plaintiff further seeks to compel production of "cell phone records of defendants and witnesses, used during the criminal investigation and prosecution, as well as records of phone calls made to and from Rikers Island." (ECF 102 at 16). DANY initially withheld these documents because it did not believe that merely redacting the phone numbers would be sufficient to guarantee the callers' safety. (ECF 73-1 at 3). Plaintiff argues that the phone records are

10

relevant because they could reveal additional "facts of the shooting," the "existence of additional suspects," potential *Brady* and *Giglio* violations, "Defendants' malice," and other bases to impeach the witnesses' credibility. (ECF 102 at 13).

At the outset, Plaintiff's request for "phone records" is different from "phone recordings," which Plaintiff now includes in his request. (ECF 102 at 16). Because phone records would only show the phone numbers of the callers, rather than the call's content, Plaintiff has made no showing how phone records are relevant and thus the request for them is **DENIED**.

For recordings of phone calls, Plaintiff has offered no evidence to suggest that Defendants relied on any phone recordings of calls "to and from Rikers Island" to determine probable cause or that Defendants even knew the contents of those calls. *See Feinberg v. Saks & Co.*, 436 N.E.2d 1279, 1280 (N.Y. 1982) (finding if probable cause existed for arrest, a malicious prosecution claim is barred absent a showing of an exonerating fact that "become[]s known to defendants between the time of detention and the time of prosecution"). Plaintiff only argues that the content of those calls "could lead to additional evidence." (ECF 102 at 17). As Plaintiff's request is only based on speculation, Plaintiff's request for those recordings is **DENIED**. *See Lemanik,* 125 F.R.D. at 608.

To the extent Defendants relied in their investigation on recordings of cell phone calls involving Defendants and/or witnesses, Plaintiff has provided no support for his assertion that the phone calls contain exculpatory evidence, evidence related to witness credibility, or evidence of malice by Defendants.[8] Without more, Plaintiff's proffer that the phone calls

---

[8] As discussed at length above, Plaintiff's attempts to find an independent basis to dispute Defendants' probable cause determination is not relevant to a malicious prosecution claim.

"could" provide such evidence, ECF 102 at 17, is speculative and conclusory. *See Lemanik*, 125 F.R.D. at 608. Accordingly, Plaintiff's motion to compel production of the phone records is **DENIED**.

### i. Grand Jury Minutes

"Courts rarely order production of grand jury minutes because they are secret." *Clark v. City of New York*, No. 16-CV-7744 (PKC) (KHP), 2017 WL 3927462, at *1 (S.D.N.Y. Sept. 7, 2017). Plaintiff withdrew his requests for grand jury testimony, with the exception of Detective Cruz's testimony, upon acknowledging that litigants should generally first request the minutes from the state court overseeing that grand jury. *See Hewitt v. City of New York*, No. 09-CV-214 (CPS) (MDG), 2009 WL 2957924, at *1 (E.D.N.Y. Sept. 11, 2009).

Plaintiff still requests production of the minutes of Detective Cruz's grand jury testimony because Plaintiff alleges that he already received a copy during his criminal proceedings pursuant to the State's obligations under *People v. Rosario*, 173 N.E.2d 881 (N.Y. 1961). Plaintiff posits that the minutes must have been lost by Plaintiff's prior counsel in this matter. (ECF 102 at 13 n. 28). The fact that Plaintiff once had possession of the minutes does not entitle him to an automatic unsealing of those minutes and circumvention of the state court procedures. *See Maldonado v. City of New York*, No. 11-CV-3514 (PKC) (HBP), 2012 WL 2359836 (S.D.N.Y. June 21, 2012) (denying motion to compel where the New York Supreme Court denied a request for minutes that the plaintiff's criminal counsel lost). Plaintiff may first request Detective Cruz's testimony minutes from the state court in conjunction with seeking the other grand jury minutes. Accordingly, Plaintiff's request for the minutes of Detective Cruz's grand jury testimony is **DENIED** at this time.

IV. **Conclusion**

For the foregoing reasons, Plaintiff's motion to compel is **GRANTED** in part and **DENIED** in part. DANY shall produce the witness statements for the witnesses identified by Plaintiff in ECF 102 within thirty days of this Order, unless DANY moves before that time for a protective order.

**SO ORDERED.**

Dated: October 2, 2019
New York, New York

*s/ Ona T. Wang*
**Ona T. Wang**
United States Magistrate Judge