**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------x
GEORGE BENN,

                Plaintiff,

                -against-

THE CITY OF NEW YORK, et al.,

                Defendants.
-------------------------------------------------------------x

18-CV-722 (LGS) (OTW)

**ORDER**

**ONA T. WANG, United States Magistrate Judge:**

This case concerns Plaintiff George Benn's ("Plaintiff") allegation that he was falsely arrested in connection with the shootings of Willis Bennet and Jawuan Faust.[1] On October 2, 2019, the Court granted in part Plaintiff's motion to compel, permitting production of witness statements but allowing non-party New York District Attorney's Office ("DANY")[2] to apply for a protective order for any statement that may implicate the law enforcement privilege. (ECF 130 at 4-6). In response, the DANY now applies for a protective order for the two responsive statements: videotaped statements of Ted Simon and Antoine Knox.[3] (ECF 131). In the alternative, if the Court orders production of the statements, the DANY requests that (1) the videos be designated "attorney's eyes only," and (2) the DANY maintain possession of the

---

[1] The Court assumes the parties' familiarity with the facts, as already laid out in the memorandum opinion & order on Plaintiff's initial motion to compel. (ECF 130).

[2] Although the City of New York is a named defendant, the DANY is not a party to this litigation. Accordingly, Plaintiff had served the DANY with a judicial subpoena for documents. (*See* ECF 98-11). The DANY subsequently filed an opposition to Plaintiff's motion to compel compliance with the subpoena. (ECF 105).

[3] Mr. Simon pled guilty to manslaughter in the first degree, and Mr. Knox pled guilty to attempted criminal possession of a weapon in the second degree, both in relation to the shootings at issue in this case. (ECF 76-1; 76-3).

video, making the video available for the parties' viewing at the DANY office. (*Id*.) Both Plaintiff and Defendants oppose the DANY's request for non-production, arguing that the statements are relevant evidence and can be adequately protected through use of an "attorney's eyes only" designation and confining viewing to the DANY's office. (ECF 132, 133).

I. **Discussion**

i. **Application of the Law Enforcement Privilege**

The party asserting the law enforcement privilege "bears the burden of showing that the privilege applies to the documents in question." *In re City of New York*, 607 F.3d 923, 944 (2d Cir. 2010). The privilege includes: "(1) information pertaining to law enforcement techniques and procedures; (2) information that undermines the confidentiality of sources; (3) information that would endanger witnesses and law enforcement personnel; (4) information that would undermine the privacy of individuals involved in an investigation; or (5) information that would seriously impair the ability of law enforcement agencies to conduct future investigations." *Dorsett v. County of Nassau*, 762 F. Supp. 2d 500, 520 (E.D.N.Y. 2011).

The DANY argues that both videotaped statements, which were produced to the Court for *in camera* review, are covered by the law enforcement privilege under either the witness endangerment prong or the impairment of future law enforcement investigation prong. Unlike confidential informant cases, there is no concern about confidentiality. Defendants already produced to Plaintiff unredacted versions of two police reports, DD-5s #101 and #105,[4] which contain both the name of the witness and a summary of his testimony. (ECF 131 at 2). Instead,

---

[4] Plaintiff previously filed redacted versions of those reports at ECF 102-9.

the DANY asserts that producing the videotaped statements would chill future witness cooperation and that public dissemination of the videos may endanger the two witnesses. (ECF 131 at 2-3).

Rather than provide an affidavit regarding how or why disclosure of the statements would hinder future investigations, the DANY only offers the general argument that potential witnesses in the future will be discouraged from cooperating if they know a video of their questioning will be publicly available. (ECF 131 at 2). The DANY *does not* claim that disclosure would hinder any specific ongoing or potential investigation, undercover or otherwise. Nor is this a case where disclosure would force the DANY to violate a promise of confidentiality to the witnesses. *Cf. Borcherse v. Commercial Union Assur. Co.*, 874 F. Supp. 78, 80 (S.D.N.Y. 1995) (applying privilege where the FDNY testified that its standard practice was to promise confidentiality of both the informants' identity and the substance of the statements). Indeed, the produced unredacted DD5s already reveal the witnesses' identities and a summary of their answers. Therefore, the DANY has not shown that the videotaped statements would hinder any future investigation.

In contrast, the DANY provides a more specific showing of witness danger, citing to a letter purportedly sent by Plaintiff to one of the witnesses, Ted Simon, threatening Mr. Simon if he cooperated with law enforcement. (ECF 131 at 3).[5] The DANY also notes that Plaintiff was previously indicted for, though not convicted of, witness tampering. (*Id*.) The DANY fails to explain, however, why disclosure of the video would put the witnesses in any additional danger,

---

[5] The Court reviewed this letter *in camera*. Although the return address does not list Plaintiff, the letter's author references the DD5 identifying Plaintiff and expresses concern that Mr. Simon talked to law enforcement despite being the author's cousin. Mr. Simon is Plaintiff's cousin.

3

considering that Plaintiff already knows the witnesses' identities and the nature of their conversations with law enforcement. The DANY's argument that the video might reveal a "cooperative demeanor" is overly speculative. Accordingly, the Court does not find that the DANY has met its burden of showing that the law enforcement privilege applies to the two videotaped statements.

### ii. **Plaintiff's Compelling Need for Production**

Even assuming *arguendo* that the DANY had made a stronger showing of witness danger such that the privilege should apply, Plaintiff has a compelling need for the statements. The presumption of non-disclosure that accompanies the law enforcement privilege can be rebutted by a showing by the plaintiff "(1) that its suit is 'non-frivolous and brought in good faith,' (2) that 'the information sought is not available through other discovery or from other sources,' and (3) that the information sought is 'important' to the party's case." *In re City of New York*, 607 F.3d at 945 (quoting *Friedman v. Bache Halsey Stuart Shields, Inc*., 738 F.2d 1336, 1343 (D.C. Cir. 1984)). In addition, the Court must determine whether Plaintiff's need for the information outweighs the "public interest in nondisclosure." *Id*.

The DANY does not argue, nor is there currently any indication, that Plaintiff brought his suit in bad faith. Nor does the DANY dispute the relevance of the statements, as asserted by both parties. Plaintiff brings claims of malicious prosecution, which require him to show a lack of probable cause for his prosecution. *See Hartman v. Moore*, 547 U.S. 250, 258-59 (2006). This would entail examining the evidence held and relied on by the prosecutors. *See Zhao v. City of New York*, No. 07-CV-3636 (LAK) (MHD), 2007 WL 4358470, at *5 (S.D.N.Y. Dec. 5, 2007). The DANY instead argues that Plaintiff should first attempt to obtain the information by deposing

4

the defendants who were either present at the video interview or viewed it. (ECF 131 at 3). One of Plaintiff's primary allegations, however, is that the detectives "fabricated witness statements and evidence" to support their case against Plaintiff. Compl. ¶ 21. The only way to determine whether the witness statements are fabricated would be to compare the original witness interview with the subsequent DD5 report. *See Goodloe v. City of New York*, 136 F. Supp. 3d 283, 299 (E.D.N.Y. 2015) (noting that claims of fabricated evidence require an "unfiltered" look at the underlying evidence). Accordingly, depositions of law enforcement would be an inadequate substitute for determining whether law enforcement misrepresented the interview in their summaries.[6]

### iii. Balancing Compelling Need with Public Interest

As shown above, the DANY has not made any showing that the videotaped statements implicate the public interest, other than the general allegation that disclosure would discourage future cooperating witnesses. Accepting the DANY's argument, however, would create an automatic bar against disclosure of *any* cooperators' evidence, a proposition for which the DANY provides no legal support. *See Floyd v. City of New York*, 739 F. Supp. 2d 376, 381 (S.D.N.Y. 2010) (noting the balancing test is "multi-factored, non-mechanical, and circumstance-specific"). Because of previous disclosures, the sensitivity of the videotaped statements is lower than typically addressed in these types of motions. Additionally, the existence of civil rights claims, such as in this suit, is a factor supporting disclosure. *Id*. at 381. ("The public has a profoundly important interest 'in giving force to the federal civil rights law'"). Accordingly, the

---

[6] This goes for both parties. If the DD5 report is contradicted by the video statement or omits relevant exculpatory facts, Plaintiff has his supporting evidence. If the DD5 report accurately summarizes with what was said in the videos, that would be relevant to Defendants' defense.

Court finds that the parties' combined need for disclosure of the two statements outweighs any public interest against disclosure.

Even when production is ordered, the Court can still fashion procedures to "minimize the effects of disclosure." *In re the City of New York*, 607 F.3d at 949. These include use of confidentiality designations, such as "attorney's eyes only," and requiring filing under seal. *Id*. The Court is aware of the raised concern that permitting Plaintiff himself to view the interviews may endanger the witnesses. Because all parties agree on the value of (1) imposing an "attorney's eyes only" designation, (2) permitting the DANY to maintain possession of the videos, and (3) requiring any filing of the statements to be made under seal, the Court adopts those restrictions on production.

## II. Conclusion

For the foregoing reasons, the DANY's motion for a protective order is DENIED. The two statements shall be produced under an "attorney's eyes only" designation. Because the DANY shall maintain possession of the two videotaped statements, the DANY shall make the two videotaped statements available to the parties for viewing at the DANY's office at mutually agreeable time(s). If the parties wish to cite to the videos as evidentiary support later in this litigation, they may apply to do so under seal. Because the DANY submitted the videotaped statements for *in camera* review, the DANY shall coordinate with Chambers for the return of

the DVDs and any attendant documents.

**SO ORDERED.**

|  |  |
|---|---|
| Dated: December 10, 2019<br>New York, New York | *s/ Ona T. Wang*<br>**Ona T. Wang**<br>United States Magistrate Judge |