UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------- X
                                   :

GEORGE BENN,
                            :
                    Plaintiff,   :          18 Civ. 722 (LGS)
                            :

          -against-        :       OPINION AND ORDER
                            :

THE CITY OF NEW YORK, et al.,    :
                  Defendants. :
----------------------------------------------------------- X

LORNA G. SCHOFIELD, District Judge:

      Plaintiff George Benn seeks damages from the City of New York (the "City") and New York City Police Department ("NYPD") detectives for his alleged unlawful incarceration and an instance of use of force, on February 19, 2015, during his incarceration.  The City and NYPD Detectives Felix Cruz and Gerard Dimuro (for purposes of this opinion, "Defendants") move for partial summary judgment on the claims relating to Plaintiff's incarceration only.  These are federal claims under 42 U.S.C. § 1983 for denial of the right to a fair trial, malicious prosecution, unreasonably prolonged detention, violation of Plaintiff's right to a speedy trial and failure to intervene, along with state law claims for malicious prosecution, negligent hiring/training/supervision/retention and the intentional infliction of emotional distress.  Plaintiff also brings federal and state claims against the City for municipal liability related to his incarceration and the incident during his incarceration.  The City seeks summary judgment on all of Plaintiff's municipal liability claims.  For the following reasons, Defendants' motion is granted.

## I.      BACKGROUND

      The background facts below are drawn from the parties' Rule 56.1 statements and other submissions on this motion.

### A.  Murder Investigation and Prosecution

On the night of December 7, 2009, Willis Bennet was shot in the head in the vicinity of East 110th Street and 1st Avenue in Manhattan and later died of his injuries.  During the same incident, Juwuan Faust was shot in the chest and survived.  Defendants were assigned to investigate the shootings.

Defendants did not recover any physical evidence at the scene.  During the course of the investigation, Defendants received several tips about the shooter including that he might be Plaintiff or possibly another individual, Teddy Paris.  On December 9, 2009, Defendants issued i-cards[1] for Plaintiff and others to whom they wanted to speak as part of the investigation.  On May 2, 2011, Chevar Reagans provided a written statement ("Reagans Statement") to Detective William Dunn at the 23 Precinct Detective Squad identifying Ted Simon as the person who shot Mr. Bennett.  Defendant Cruz testified that, a few days after the Reagans Statement was made, Detective Dunn told Defendant Cruz about the statement and provided it to him; Defendant Cruz then placed the Reagans Statement into the case file, the contents of which the district attorney subsequently copied.  This process was not documented.  On May 8 and July 26, 2011, Defendant Cruz prepared i-cards for Mr. Simon and Mr. Reagans, respectively.  Despite these efforts, the investigation grew cold.

In 2012, the case was reassigned to a new prosecutor, Assistant District Attorney Alex Spiro ("ADA Spiro"), who conducted his own investigation of the shootings.  ADA Spiro gained the cooperation of Ashley Taylor who stated that she observed Plaintiff shoot Mr. Bennett in the head.  ADA Spiro also interviewed Ted Simon on April 16 and 19, 2013; Mr. Simon stated that

---

[1] An i-card alerts other NYPD officers that the issuing detective wants to speak with the subject of the card.

he witnessed Plaintiff shoot Mr. Bennett in the head.  Defendant DiMuro testified that ADA Spiro called him several times to discuss the Reagans Statement and express the need to speak with Mr. Reagans.  On the morning of April 19, 2013, before Plaintiff's case was presented to the grand jury, Defendant DiMuro contacted Mr. Reagans by telephone.  Mr. Reagans agreed to come to the district attorney's office, stated he was high when he was debriefed by Detective Dunn and recanted his prior identification.  After ADA Spiro interviewed Mr. Reagans, he presented the case against Plaintiff to the grand jury.  Ms. Taylor and Defendant DiMuro testified at the proceeding, and the grand jury returned an indictment against Plaintiff for Mr. Bennett's murder.  Plaintiff was arrested on April 19, 2013, the same day he was indicted.

Ted Simon was also indicted for his involvement in the shootings, though he was not alleged to have fired the shot that killed Mr. Bennett.  On April 29, 2013, ADA Spiro served a voluntary disclosure form ("VDF") in the Simon prosecution.  The VDF references an identification of Mr. Simon made on May 2, 2011, at the 23 Precinct Detective Squad, the same day and place the Reagans Statement was made identifying Mr. Simon as the shooter.  Plaintiff's defense counsel first learned of the Reagans Statement on August 29, 2016.  The charges against Plaintiff were dismissed on June 16, 2017.  He had been incarcerated approximately four years.

### B.  February 19, 2015, Incident

Defendant alleges that on February 19, 2015, Captain Delroy Morrison and Corrections Officers Xavier McNeil, Matthew Landow, Jonathen Powell, Jermain Phillips, Gordon Noel and Sandra Murray (collectively, "Corrections Defendants") used excessive force on Plaintiff while he was in custody at Rikers Island.

## II.      STANDARD

Summary judgment is appropriate where the record establishes "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  There is a genuine dispute as to a material fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 248 (1986); *accord Nick's Garage, Inc. v. Progressive Cas. Ins. Co.*, 875 F.3d 107, 113-14 (2d Cir. 2017).  A court must construe the evidence in the light most favorable to the nonmoving party and must draw all reasonable inferences in favor of the nonmoving party. *Liberty Lobby*, 477 U.S. at 255; *accord Soto v. Gaudett*, 862 F.3d 148, 157 (2d Cir. 2017).  "It is not the province of the court itself to decide what inferences should be drawn," and "if there is any evidence in the record from any source from which a reasonable inference could be drawn in favor of the nonmoving party, summary judgment is improper."  *Vivenzio v. City of Syracuse*, 611 F.3d 98, 106 (2d Cir. 2010); *accord Figueroa v. W.M. Barr & Co., Inc.*, No. 18 Civ. 11187, 2020 WL 5802196, at *1 (S.D.N.Y. Sept. 29, 2020).  When the movant has properly supported its motion with evidentiary materials, the opposing party may only establish a genuine issue of fact by "citing to particular parts of materials in the record."  Fed. R. Civ. P. 56(c)(1)(A).  "[A] party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment."  *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (alteration in original); *accord Pierre v. City of N.Y.*, 844 F. App'x 411, 413 (2d Cir. 2021) (summary order). To prevail on a § 1983 claim, Plaintiff must show "the violation of a right secured by the Constitution and laws of the United States" and that "the alleged deprivation was committed by a person acting under color of state law."  *Jones v. Cnty. of Suffolk*, 936 F.3d 108, 114 (2d Cir. 2019) (citation omitted).

III.    **MOTION FOR PARTIAL SUMMARY JUDGMENT**

Plaintiff brings federal and state claims asserting that he was unlawfully arrested, prosecuted and detained.  He asserts that the evidence is sufficient for a reasonable jury to find that (1) Defendants shaped the record in accordance with ADA Spiro's preference to identify Plaintiff as the shooter, (2) actively suppressed the production of the Reagans Statement and (3) fabricated or coerced Mr. Reagans' recanting of the Reagans Statement, which had identified Mr. Simon as the shooter.

A.    **Denial of Right to Fair Trial Claim**

The Third Claim asserts that Defendants violated Plaintiff's constitutional right to a fair trial by withholding and suppressing exculpatory evidence, and by fabricating evidence, including DD-5 reports and the criminal complaint, which they forwarded to prosecutors. Defendants' motion for summary judgment on this claim is granted.  The uncontroverted evidence shows that exculpatory evidence was disclosed and was not fabricated.

Under the Due Process Clause, a criminal defendant has the "right to a fair trial." *Frost v. N.Y.C. Police Dep't*, 980 F.3d 231, 244 (2d Cir. 2020).  This right is violated when a police officer fabricates information likely to influence a jury's decision and communicates that information to prosecutors, causing Plaintiff to suffer a deprivation of liberty, whether or not the case proceeds to trial.  *Ashley v. City of N.Y.*, 992 F.3d 128, 138 (2d Cir. 2021).  The existence of probable cause to arrest Plaintiff is not a defense to this claim.  *See Garnett v. Undercover Officer C0039*, 838 F.3d 265, 277-78 (2d Cir. 2016).  Police officers may also be held liable under § 1983 for *Brady* violations if they withhold exculpatory or impeaching evidence from prosecutors.  *See Bellamy v. City of N.Y.*, 914 F.3d 727, 751 (2d Cir. 2019).

Plaintiff alleges that Defendants suppressed the Reagans Statement and fabricated or induced Mr. Reagans' recantation. As to the alleged suppression of the Reagans Statement, the uncontroverted evidence is that ADA Spiro was aware of it. Defendants testified that Detective Dunn obtained the Reagans Statement on May 2, 2011, and communicated it to Defendant Cruz a few days later. The Reagans Statement was placed in the case file. On July 26, 2011, Defendant Cruz prepared an i-card for Mr. Reagans. After ADA Spiro was assigned as prosecutor and shortly before Plaintiff's indictment, ADA Spiro called Defendant DiMuro to discuss Mr. Reagans' identification. Defendant DiMuro convinced Mr. Reagans to come to the district attorney's office where Mr. Reagans met with ADA Spiro and his supervisor on April 19, 2013. During the meeting, Mr. Reagans recanted his prior identification of Mr. Simon as the shooter. On April 27, 2013, Defendant DiMuro, who was not present at the meeting with Mr. Reagans, drafted a DD-5 stating that ADA Spiro and his Bureau Chief had debriefed Mr. Reagans, who recanted his prior statement and stated that he was high at the time he made the earlier statement and was in Baltimore visiting his sister (not New York) the day of the shootings. On April 29, 2013, ADA Spiro served a VDF in the prosecution of Mr. Simon, stating that an identification of Mr. Simon as the shooter had been made on May 2, 2011, at the 23 Precinct Detective Squad. The Reagans Statement was communicated to Plaintiff's defense counsel on August 29, 2016, and all charges were dropped against Plaintiff on June 16, 2017. The evidence shows that Mr. Reagans' identification was not kept from ADA Spiro and that he was fully aware of it. There is no evidence that Mr. Reagans was induced to recant his identification or that his recantation was fabricated.

Plaintiff admits that "there is no direct, smoking gun evidence that Detectives Cruz and Dimuro fabricated or suppressed evidence." Plaintiff argues that the following circumstantial

6

evidence is sufficient for a reasonable factfinder to infer misconduct. *See Hayes v. Dahlke*, 976 F.3d 259, 273 (2d Cir. 2020) (finding circumstantial evidence may create a genuine issue of fact). First, there were multiple potential subjects of the investigation, but the case grew cold because witnesses were uncooperative. Second, Defendant DiMuro testified that ADA Spiro was "gung ho" about the case and was "liking" George Benn as a suspect for the homicide. Third, the only evidence pointing to Plaintiff as the shooter were statements by self-interested parties, Ashley Taylor, who had possible personal reasons to identify Plaintiff as the shooter, and Mr. Simon, another suspect in the shootings. Fourth, the Reagans Statement identifies Mr. Simon as the person who shot Mr. Bennett. Fifth, there is no chain of custody procedure to record when detectives transferred documents to the district attorney's office, and, thus, no non-testimonial evidence that the Reagans Statement was placed in the case file or transferred to the district attorney's office. Finally, there is no contemporaneous evidence that Mr. Reagans recanted the Reagans Statement, and Defendant DiMuro's after-the-fact DD-5 and testimony concerning Mr. Reagans' reversal of his prior identification could be rejected by a reasonable jury.

Plaintiff argues that the circumstantial evidence would allow a factfinder to infer that Defendants were under "tremendous pressure to satisfy an aggressive prosecutor's favored theory of the case," buried the Reagans Statement and fabricated Mr. Reagans' recantation. This argument is unpersuasive because it is speculative. *See Hicks*, 593 F.3d at 166. First, that ADA Spiro was "gung ho" about the case and "liked" Plaintiff as a suspect does not support the inference that he pressured Defendants to do anything improper or that ADA Spiro did anything improper, and the evidence in the record does not suggest otherwise. Second, as recounted above, the uncontroverted evidence shows that ADA Spiro was aware of Mr. Reagans'

identification and its significance.  Plaintiff's concerns about the chain of custody or records of transfer of the Reagans Statement cannot create a genuine dispute of fact that Mr. Reagans' identification was withheld from ADA Spiro.

Finally, no evidence, only speculation, supports the claim that Defendant DiMuro either induced Mr. Reagans to fabricate his retraction, or that Defendant DiMuro fabricated the retraction in its entirety.  Although Defendant DiMuro spoke with Mr. Reagans on the phone and persuaded him to meet with ADA Spiro and apparently spoke with Mr. Reagans about his prior statement, Defendant DiMuro testified that ADA Spiro and his supervisor debriefed Mr. Reagans for two hours without Defendant DiMuro, when Mr. Reagans retracted his prior statement. There is no evidence to the contrary.  *See, e.g.*, *Fappiano v. City of N.Y.*, 640 F. App'x 115, 118 (2d Cir. 2016) (summary order) (finding insufficient evidence to create a genuine dispute that information was fabricated).  Under these circumstances, no reasonable jury could conclude that Defendant DiMuro fabricated Mr. Reagans' retraction.

Plaintiff also argues that § 1983 claims have been recognized when police officers fail to turn over *Brady* materials prior to indictment.  A § 1983 claim may be based on a *Brady* violation.  *See Bellamy*, 914 F.3d at 751.  There is no *Brady* violation here because defense counsel for Plaintiff was made aware of the Reagans Statement on August 29, 2016, albeit post-indictment but before any trial.  *See Leka v. Portuondo*, 257 F.3d 89, 100 (2d Cir. 2001) (noting that "it is not feasible or desirable to specify the extent or timing of disclosure [under *Brady*]" except that the defense must have an "opportunity to use the evidence when disclosure is made"); *accord Proctor v. McCarthy*, No. 19 Civ. 2988, 2020 WL 1149660, at *18 (S.D.N.Y. Mar. 10, 2020).  "[A]s long as a defendant possesses *Brady* evidence in time for its effective use [at trial], the government has not [committed a *Brady* violation] simply because it did not

produce the evidence sooner." *United States v. Coppa*, 267 F.3d 132, 144 (2d Cir. 2001); *accord United States v. Campbell*, 850 F. App'x 102, 109 n.4 (2d Cir. 2021) (summary order). Defendants' motion for summary judgment on the denial of right to fair trial claim (Claim Three) is granted.

### B.    Malicious Prosecution

Defendants move for summary judgment on Claims One and Seven, the federal and state malicious prosecution claims respectively.  Summary judgment is granted on both claims because Plaintiff has not produced evidence sufficient to rebut the presumption of probable cause, which is a defense to malicious prosecution.

To prevail on a § 1983 claim against a state actor for malicious prosecution, a plaintiff must show a post-arraignment "seizure or other perversion of proper legal procedures implicating [his] personal liberty and privacy interests under the Fourth Amendment" and establish the elements of a malicious prosecution claim under state law.  *See Lanning v. City of Glens Falls*, 908 F.3d 19, 24 (2d Cir. 2018).  Under New York law, the elements of a claim for malicious prosecution are (1) the initiation of a proceeding, (2) its termination favorably to plaintiff, (3) lack of probable cause for commencing the proceeding and (4) actual malice as a motivation for the defendant's actions.  *See Frost*, 980 F.3d at 242.

"[T]he existence of probable cause is a complete defense to a claim of malicious prosecution in New York."  *Savino v. City of N.Y.*, 331 F.3d 63, 72 (2d Cir. 2003); *accord Dettelis v Sharbaugh*, 919 F.3d 161, 164 (2d Cir 2019).  Under New York law, probable cause "is the knowledge of facts, actual or apparent, strong enough to justify a reasonable man in the belief that he has lawful grounds for prosecuting the defendant in the manner complained of." *Cardoza v. City of N.Y.*, 29 N.Y.S.3d 330, 340 (1st Dep't 2016) (citation omitted) (internal

quotation marks omitted).  "[I]ndictment by a grand jury creates a presumption of probable cause that may *only* be rebutted by evidence that the indictment was procured by 'fraud, perjury, the suppression of evidence or other police conduct undertaken in bad faith.'"  *Dufort v. City of N.Y.*, 874 F.3d 338, 352 (2d Cir. 2017) (alterations and citations omitted) (applying New York law); *accord Roberts v. City of N.Y.*, 97 N.Y.S.3d 3, 11 (1st Dep't), *aff'd*, 137 N.E.3d 497 (N.Y. 2019). "The presumption may be overcome only by evidence establishing that the police witnesses have not made a complete and full statement of facts either to the Grand Jury or to the District Attorney, that they have misrepresented or falsified evidence, that they have withheld evidence or otherwise acted in bad faith." *Rothstein v. Carriere*, 373 F.3d 275, 283 (2d Cir. 2004) (applying New York law); *accord Roberts*, 97 N.Y.S.3d at 11.

In this case, the grand jury indictment creates a presumption of probable cause that Plaintiff has not rebutted.  As discussed above, Plaintiff has not produced evidence to show suppression or fabrication of evidence with respect to the Reagans Statement as he alleges.  Defendants' motion for summary judgment on Claims One and Seven is granted.

### C.      Unreasonably Prolonged Detention

Defendants' motion for summary judgment on Claim Two, the unreasonably prolonged detention claim, is granted.  To prevail on a claim of unreasonably prolonged detention Plaintiff must establish "(1) that he has a right to be free from continued detention stemming from law enforcement officials' mishandling or suppression of exculpatory evidence, (2) that the actions of the officers violated that right, and (3) that the officers' conduct shocks the conscience." *Russo v. City of Bridgeport*, 479 F.3d 196, 205 (2d Cir. 2007) (internal quotations omitted).  As discussed in detail above, Plaintiff has not adduced evidence sufficient for a reasonable jury to conclude that exculpatory evidence was mishandled or suppressed.

**D.      Right to a Speedy Trial**

Defendants' motion for summary judgment on Claim Four, the right to a speedy trial claim, is granted.  There is no evidence in the record from which a reasonable jury could conclude that Defendants were personally involved, or somehow caused the delay, in Plaintiff's pretrial incarceration.

"It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Frost*, 980 F.3d at 257 n.24 (quoting *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (internal quotation marks omitted)).  A plaintiff may establish personal involvement by making one of five showings:

> (1) The defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of [the plaintiffs] by failing to act on information indicating that unconstitutional acts were occurring.

*Warren v. Pataki*, 823 F.3d 125, 136 (2d Cir. 2016) (quoting *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995)) (alteration in original).

There is no evidence to suggest that Defendants had any involvement in delaying the resolution of Plaintiff's criminal case, or indeed, any involvement at all in the case after the indictment on April 19, 2013.  The record is also silent on why the charges against Plaintiff were eventually dropped.  Plaintiff's claim cannot stand where the evidence fails to show Defendants' personal involvement.  *See, e.g.*, *Barnett v. City of Yonkers*, No. 15 Civ. 4013, 2018 WL 4680026, at *11 (S.D.N.Y. Sept. 28, 2018). Summary judgment is granted on Plaintiff's Fourth Claim.

### E.      Failure to Intervene

Defendants' motion for summary judgment on Claim Five, the failure to intervene, is granted because there can be no failure to intervene where there is no underlying constitutional violation.  *See Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 129 (2d Cir. 1997); *accord Kayo v. Mertz*, No. 19 Civ. 365, 2021 WL 1226869, at *16 (S.D.N.Y. Mar. 31, 2021).

### F.      Intentional Infliction of Emotional Distress

Defendants seek summary judgment on Claim Nine for intentional infliction of emotional distress ("IIED").  Defendants' motion for summary judgment on this claim is granted because Plaintiff has not proffered evidence from which a reasonable jury could find that Defendants engaged in extreme and outrageous conduct or that Plaintiff suffered severe emotional distress.

Under New York law, a claim for IIED requires a showing of "(i) extreme and outrageous conduct, (ii) intent to cause, or disregard of a substantial probability of causing, severe emotional distress; (iii) a causal connection between the conduct and injury; and (iv) severe emotional distress."  *Rich v. Fox News Network, LLC*, 939 F.3d 112, 122 (2d Cir. 2019) (applying New York law).  Extreme and outrageous conduct is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in civilized society."  *Bender v. City of N.Y.*, 78 F.3d 787, 790 (2d Cir. 1996) (applying New York law) (internal quotation marks omitted); *accord Levin v. Am. Document Servs., LLC*, 828 F. App'x 788, 793 (2d Cir. 2020) (summary order).  Conclusory statements that Plaintiff suffered emotional distress are insufficient as a matter of law.  *See Medina v. City of N.Y.*, No. 19 Civ. 9412, 2020 WL 7028688, at *14 (S.D.N.Y. Nov. 30, 2020) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Plaintiff must present medical evidence showing the effects of the emotional distress.  *See Roche v. Claverack Co-op.*

*Ins. Co.*, 874 N.Y.S.2d 592, 597 (3d Dep't 2009) (collecting cases); *accord Blackwood v. Omorvan*, No. 16 Civ. 644, 2019 WL 4600662, at *8 (S.D.N.Y. Sept. 23, 2019).

Plaintiff cannot sustain his IIED claim against Defendants.  For the same reasons that the evidence does not support a finding of unconstitutional conduct, the evidence does not support a finding of Defendants' extreme and outrageous conduct.  In addition, Plaintiff's conclusory claim of emotional distress is unsupported by any medical or other evidence except his own conclusory statements.  Defendants' motion for summary judgment is granted on Claim Nine.

G.     **Claims against the City:  Municipal Liability, Negligent Supervision or Retention**

Defendants seek summary judgment on Claims Six and Eight for municipal liability and negligent supervision or retention.  Summary judgment is granted on the municipal liability claims because Plaintiff has not shown that it is the City's official custom or policy to deny Plaintiff's constitutional rights.  Summary judgment is also granted on the negligent supervision or retention claim because Plaintiff has not identified a specific deficiency in the City's training program.

To establish municipal liability for a § 1983 claim, Plaintiff must satisfy the requirements of *Monell v. Dep't of Social Servs.*, 436 U.S. 658 (1978), and show that he was denied a constitutional right caused by an official municipal policy or custom.  *See Frost*, 980 F.3d at 257. Failure by the government to train its employees is not an independent cause of action but may extend liability to a municipal organization where that failure to train causes an independent constitutional violation.  *Id.*  Further, a single incident of unconstitutional activity is insufficient to impose liability under *Monell* unless that incident can be attributed to a municipal policymaker.  *Mitchell v. City of N.Y.*, 841 F.3d 72, 80 (2d Cir. 2016), *remanded to* No. 12 Civ. 2674, 2018 WL 671257 (S.D.N.Y. Jan. 31, 2018), *aff'd*, 749 F. App'x 75 (2d Cir. 2019)

(summary order).  Finally, to proceed beyond summary judgment on a failure-to-train theory, Plaintiff must identify a specific deficiency in the City's training program and establish that that deficiency caused the constitutional deprivation.  *Okin v. Vill. Of Cornwall-On-Hudson Police Dept.*, 577 F.3d 415, 440 (2d Cir. 2009); *accord Raydo v. City of N.Y.*, No. 18 Civ. 10919, 2020 WL 2571040, at *5 n.6 (S.D.N.Y. May 20, 2020).

Under New York law, in addition to the negligence elements of a claim for negligent supervision or retention, Plaintiff must show (1) an employee-employer relationship; "(2) that the employer knew or should have known of the employee's propensity for the conduct which caused the injury prior to the injury's occurrence; and (3) that the tort was committed on the employer's premises or with the employer's chattels."  *Rich*, 939 F.3d at 129 (applying New York law) (internal quotation marks omitted).

Plaintiff's claims for municipal liability regarding the murder investigation and prosecution cannot stand because there are no underlying constitutional violations or instances of negligence.  Regarding the incident on February 19, 2015, Plaintiff's municipal liability claim fails because Plaintiff has not identified a specific deficiency in the City's training program, and there is no evidence in the record that New York City knew or had reason to know that the Corrections Defendants had a propensity for the conduct that led to the alleged excessive force incident.  Therefore, Defendants' motion for summary judgment is granted as to Claims Six and Eight.

IV.    **CONCLUSION**

For the foregoing reasons, Defendants' motion for partial summary judgment is granted. For clarity, Plaintiff's sole remaining claims are Claims Ten and Eleven, for excessive force and failure to intervene in the February 19, 2015, incident, which were not the subject of this motion.

14

The Clerk of Court is respectfully directed to close the motion at Dkt. No. 159.  A trial scheduling order will follow, as will a referral to the Magistrate Judge for a settlement conference.

Dated:  July 28, 2021
       New York, New York

**LORNA G. SCHOFIELD**
**UNITED STATES DISTRICT JUDGE**