N4RHBenC

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------x

GEORGE BENN,

             Plaintiff,

         v.                     18 Civ. 722 (JLR)

THE CITY OF NEW YORK, *et al.*,

                            Conference

            Defendants.

------------------------------x

                           New York, N.Y.
                           April 27, 2023
                           10:00 a.m.

Before:

                HON. JENNIFER L. ROCHON,

                           District Judge

                  APPEARANCES

ADVOCATES FOR JUSTICE, CA
     Attorneys for Plaintiff
BY:  RICHARD SOTO
     LAINE ARMSTRONG

NEW YORK CITY LAW DEPARTMENT
     Attorneys for Defendants
BY:  JOHN MICHAEL PESIN
     ZACHARY KALMBACH

N4RHBenC

1          (Case called)

2          MR. SOTO:  Richard Soto, for the plaintiff.

3          THE COURT:  Good morning, Mr. Soto.

4          MS. ARMSTRONG:  Lain Armstrong for the plaintiff.

5          THE COURT:  Good morning, Ms. Armstrong.

6          MS. ARMSTRONG:  Good morning.

7          MR. PESIN:  Good morning, your Honor.  Michael Pesin

8   appearing on behalf of the defendants from the New York City

9   Law Department.

10          MR. KALMBACH:  Good morning, your Honor.  Zachary

11   Kalmbach on behalf of the defendants from the Law Department.

12          THE COURT:  Good morning.  Give me one moment.

13          We are here for a final pretrial conference before the

14   trial is to begin shortly.  So I know this case is new to me

15   but not new to everyone else.  So I'm looking forward to

16   getting it across the finish line for the parties.

17          I have a list of items that I intend to go through for

18   purposes of this final pretrial conference, and then I'm happy

19   to talk about anything else that the parties have for me so

20   that we can be as prepared as possible for the trial.

21          Now, speaking of that, the first item I have is I am

22   going to be adjusting the date of the trial slightly.  I need

23   to because I have another trial that's going to run into it.

24   So instead of starting on the Monday, we're going to start on

25   the Wednesday, May 10.  And I will tell the jury that we will

N4RHBenC

1    go into early the next week.  I don't know that we'll need to,

2    but to give them that same time frame, I'll do that, and we'll

3    talk it about when we get to the voir dire section.

4              But, Mr. Soto and Ms. Armstrong, any issue with that?

5              MR. SOTO:  None, your Honor.

6              THE COURT:  Thank you.

7              Mr. Pesin and Mr. Kalmbach, any issue?

8              MR. PESIN:  None, your Honor.

9              THE COURT:  OK.  Great.  We'll plan on that Wednesday

10   to start the trial.  My other trial should be done by then, but

11   if it's done early, we'll just have a break between.  I just

12   wanted you to have certainty about when we'll start.

13             In terms of the trial dates, trial schedule, the way I

14   typically do trial is it will start at 9 a.m., the trial day.

15   We will spend from 9:00 to 9:30 together, just the parties and

16   myself, in case there are any issues that we should talk about.

17   Jury will come in at 9:30.  We will have a break at lunch ——

18   we'll have a midmorning break, then we'll have the lunch break

19   about 12:15 to 1:15, and then we'll have an afternoon break,

20   and the trial day will end at 4 p.m.

21             That gives us five hours of trial time during the day

22   if you exclude the breaks.  I will let the jury know that

23   that's our schedule, and we will stick with it so that they can

24   plan their days; meaning, they can plan that they can take some

25   calls during the lunch period or they know they can get home

N4RHBenC

```
 1    and pick up their kids or whatever it is.

 2            So we're going to stick to this schedule absent some

 3    emergency.  What that means also is we're going to use every

 4    minute of that time so that we are most effective and efficient

 5    before the jury.  So if it gets to be, let's say, 3:45 and your

 6    witness finishes, you need to have your next witness here, even

 7    if it's only for 15 minutes, or else you rest.  We're going to

 8    fill every minute of time between the 9:30 and 4 p.m. trial day

 9    for the jurors.  And as I said, I'll have a designated time for

10    breaks and for lunch, so you'll be taking a pause at that point

11    in your witnesses, again, to give people some level of control

12    over their personal lives.

13            Any issues with that trial schedule, Mr. Soto?

14            MR. SOTO:  None, your Honor.

15            THE COURT:  Thank you.

16            Mr. Pesin?

17            MR. PESIN:  No, your Honor.

18            THE COURT:  Is it Pesin?

19            MR. PESIN:  That's correct.

20            THE COURT:  OK.  Got it so far.

21            All right.  So that's the first issue.  The reason I'm

22    holding the trial day that way is because we'll have time, as I

23    mentioned, before trial starts, we'll have time during the

24    breaks, we'll have time during lunch, and we'll time after

25    4 o'clock to talk about any issues that come up during this
```

N4RHBenC

1   trial.  My goal is to make sure that the jury's time is used

2   efficiently.  So if you anticipate that there's going to be an

3   issue, some line of questioning that you know your adversary is

4   going to have a problem with, preview it during one of those

5   breaks so we can decide and not have lengthy sidebars, not have

6   lengthy pauses in front of the jury if you know that there's

7   going to be an argument over a particular exhibit, although I

8   don't think there should be now that we have all this pretrial

9   work finished.  Again, those times are for us to talk so that

10  we can make sure that the jury's five hours is spent on giving

11  them information and testimony.

12         All right.  Let me get to my next issue, which is the

13  motion to quash the subpoena.  Let me hear first from

14  plaintiffs regarding the motion to quash, then I'll hear from

15  defendants.  And I have some questions, then I'll rule so that

16  you have my ruling now.

17         But before I hear from plaintiff, the return date on

18  the subpoena is tomorrow.  Did the defendants receive any

19  documents yet?

20         MR. PESIN:  No, your Honor, not yet.

21         THE COURT:  Just so I have context.

22         Mr. Soto or Ms. Armstrong, would you like to address

23  your motion?

24         MR. SOTO:  Thank you, your Honor.

25         As a first matter, the subpoena should be quashed

N4RHBenC

1    because it's untimely.  It's clearly a subpoena for material

2    that should have been sought during the discovery that

3    defendants had ample time to make a motion to reopen discovery

4    and show good cause why the material should have been sought.

5    The defendants argue that this is exclusively a subpoena for

6    impeachment materials and therefore trial exhibits, but the

7    subpoena is not limited to material that would be admissible

8    under Rule -- Federal Rule of Evidence 609.  It's broader than

9    that.  It asks for the defendants' —— for the

10   plaintiff's entire criminal history from Albany.  It doesn't

11   limit itself to material that would reflect convictions that

12   carried a sentence of —— a possible sentence of one year or

13   punishment by death or convictions for those crimes that deal

14   with the plaintiff's reputation for truthfulness.

15          Secondly, the subpoena itself should be quashed

16   because it's outside the geographical limitation of this

17   courthouse.  The office that the materials is being sought from

18   is in Albany, and it's returnable at Corporation Counsel's

19   office on Church Street, and it's seeking certified copies of

20   materials.  So it's distinguishable from cases where courts

21   have exercised their discretion to permit subpoenas to stand

22   that seek material over 100 miles outside the courthouse.

23   Those are usually limited to instances where it's seeking

24   electronic information that could be electronically sent to the

25   person serving the subpoena or where some special arrangement

N4RHBenC

1    has been made by the person seeking the subpoena to get the

2    material directly at the point where it would come from.

3           Secondly, we have two further points in our letter

4    that we filed with the Court on April 21 seeking limiting

5    instructions if the Court decides not to quash the subpoena.

6           I think the second point is a bit moot because the

7    defendants have conceded they're only seeking this material for

8    impeachment purposes.  Be that as it may, we believe there

9    needs to be a limitation on any materials sought under Rule 609

10   for impeachment purposes.  At the least, any material being

11   sought that's older than ten years that reflects convictions

12   older than ten years that fall under the ambit of Rule 609

13   should be excluded because Rule 609 requires that we be given

14   written notice —— reasonable notice in written format before

15   informing us exactly what materials older than ten years the

16   defendants seek to use for impeachment purposes, and given the

17   timing of the subpoena, we don't believe that that's going to

18   be possible.

19          We cited one case where the court excluded Rule 609

20   material older than ten years at the point where motions *in*

21   *limine* were being decided because written notice had not been

22   served at that point.  And we're approaching a week and a half

23   before trial, and the City doesn't even have the documents yet.

24          In addition to that, we're seeking to have any

25   material that the -- any other material that defendants seek to

N4RHBenC

1    use under Rule 609 for impeachment purposes to be brought

2    before the Court beforehand.  So we haven't seen the material

3    so that we can make a proper determination, then, whether we're

4    going to object under Rule 403 for prejudicial purposes.

5    That's all, your Honor.

6              THE COURT:  Thank you, Mr. Soto.

7              Mr. Kalmbach or Mr. Pesin.

8              MR. PESIN:  Yes, your Honor.  Is there any particular

9    area the Court would like us to start with or just --

10             THE COURT:  You can address anything.  I have a couple

11   of questions.

12             MR. PESIN:  Thank you, your Honor.

13             Just to clarify one point, the subpoena that we issued

14   for defendants' criminal history, or rap sheet, is going to be

15   limited to only convictions because it wasn't a subpoena that

16   was attached with a general release.  So what we anticipate to

17   receive is a rap sheet that would be redacted so we would only

18   be limited in knowing the convictions that are contained in

19   plaintiff's criminal history.

20             I'll just go chronologically, based on the arguments

21   that plaintiff made.  In terms of the timeliness issue, as we

22   indicated in our letter, courts routinely find that trial

23   subpoenas that are limited in scope and limited for purpose,

24   for impeachment purpose, are admissible even -- excuse me, are

25   proper even after the discovery period has closed.  And like I

1    said before, since this is a subpoena that requests for

2    defendants' prior criminal convictions that will only be

3    limited to convictions and no other personal identifying

4    information, it's properly limited in its scope.

5          THE COURT:  You're only seeking to introduce it for

6    impeachment purposes, right?

7          MR. PESIN:  For impeachment purposes on

8    cross-examination, correct.

9          THE COURT:  And a question on timeliness.  So, again,

10   the case is new to me.  But I've looked back at the record, and

11   it seems like this case was scheduled to go to trial back in

12   January of 2022, then it was adjourned to April 18, 2022, then

13   adjourned to June 2022, July 2022, then set for January 2023,

14   then it was reassigned to me, and since then we've adjourned it

15   to March 2023, and now we finally have it on May 10, 2023.  In

16   all of that time, assuming that service of a trial subpoena

17   even after the close of discovery is appropriate, why are we

18   waiting until now to do this?

19         MR. PESIN:  Well, your Honor, in terms of when we

20   submitted the subpoena, it was only recently done, but we did

21   explore through the deposition — through

22   plaintiff's deposition and through interrogatory requests,

23   information about his prior convictions.  We don't have an

24   answer to that question.  Myself and Mr. Kalmbach only joined

25   this case approximately two weeks ago.  It was, obviously,

N4RHBenC

1   during trial preparation, one of the first things we noticed,

2   and obviously, we attempted to rectify that issue as soon as

3   possible.

4           THE COURT:  OK.  Continue.  What about the geographic

5   limitation?

6           MR. PESIN:  Yes, your Honor.  So in terms of the

7   geographic limitation, I think that when ⸺ what that rule

8   intended to protect is to protect witnesses from having to be

9   dragged into trial ⸺ the rule was designed to protect

10  witnesses from the burden of travel.  The case that we cite

11  stands for the general proposition that when compliance with a

12  subpoena can be accomplished by mail or electronic mail,

13  meaning email, like we anticipate will be accomplished in this

14  case, courts have regularly found that those types of subpoenas

15  are in compliance with Rule 45(c) geographic limitations.  When

16  you read that case law together with the understanding that the

17  hundred-mile restriction was really designed to prevent -- to

18  alleviate the undue burden associated with travel in excess of

19  100 miles, I think that there is -- I think that the Court

20  could see that our position is correct.

21          THE COURT:  You are assuming you're going to get this

22  information electronically?

23          MR. PESIN:  I believe -- it's up to the agency how

24  they want to send it.  Ordinarily, they would -- they can do it

25  both ways.  Sometimes, depending on who processes it at DCJS,

N4RHBenC

1    it can be just by email or mail.  Sometimes we receive it by

2    email and then it will arrive by paper copy as well.  But it's

3    up to the agency how to produce those records.

4              THE COURT:  Anything else?

5              MR. PESIN:  Your Honor, just to clarify, in terms of

6    the timeliness of the request, this is information that we were

7    routinely seeking during the pendency of this case like I

8    mentioned before.  It came up during plaintiff's deposition; it

9    came up during other portions of discovery.  But in light of

10   how much time has passed, this is just a continuation of

11   getting the most up-to-date records that we're entitled to

12   during the pendency of this case.

13             THE COURT:  Thank you, Mr. Pesin.  Anything else?

14             MR. PESIN:  No, your Honor.  I think that satisfies

15   that category.  I believe that the issue concerning 609

16   implications or Federal Rule of Evidence 403, I believe that

17   those issues are premature at this point.  I think we can all

18   agree that plaintiff's criminal conviction is relevant to his

19   credibility for impeachment purposes, but in terms of any 609

20   implications, I don't believe that plaintiff is -- or I don't

21   believe either party's in a position yet to make 609 arguments

22   since we do not know what's contained in plaintiff's criminal

23   history.

24             I guess, your Honor, if I may, just the very last

25   thing I'll say about that topic is this is information that the

N4RHBenC

1    plaintiffs should already be aware of.  So the risk of any

2    prejudice seems little to none.

3              THE COURT:  Thank you, Mr. Pesin.

4              That was my question, Mr. Soto, what is the prejudice

5    to this late subpoena, given that it's information that,

6    presumably, your client knows about?

7              MR. SOTO:  Well, your Honor, my client doesn't have an

8    exact recollection of exactly what's in his criminal history.

9    He has a layman's understanding of it, but he doesn't have a

10   lawyer's understanding of what might implicate him for

11   prejudicial purposes.  And the late timing of this doesn't

12   allow me the opportunity to review those records for any

13   Rule 403 or 609 implications.

14             THE COURT:  Thank you, Mr. Soto.

15             OK.  I'm going to rule now as follows:

16             Despite defendants' failure to seek the criminal

17   history documents prior to the previous trial dates in this

18   matter, courts in this district do appear to permit limited

19   trial subpoenas where those subpoenas do not seek brand new

20   discovery but rather seek material for cross-examination and

21   impeachment as here.  Therefore, I will not quash the subpoenas

22   for the following reasons:

23             First, "Trial subpoenas are appropriate in certain

24   circumstances, such as securing an original document previously

25   disclosed during discovery or for purposes of memory

recollection or trial preparation."  Where a party "intends to
use the documents it has requested in these subpoenas for
cross-examination and impeachment only, they are properly
classified as trial subpoenas."  I am citing to the
*Agapito v. AHDS Bagel LLC*, case, 2018 3216119, at *1 (S.D.N.Y.
May 17, 2018)(internal citations omitted).

        Here, defendants are seeking criminal history records
for plaintiff, specifically, conviction records only, which
they contend they plan to use for cross-examination and
impeachment purposes only and, in particular, under Rule 609.
This type of subpoena is not the kind contemplated in the cases
cited by the plaintiff, including the *McKay v. Tri-Borough
Bridge and Tunnel Authority* case, 2007 WL 3275918, at *2
(S.D.N.Y. 2007), and the *Ferrer v. Racette*, 2017 WL 1750377, at
*2 (S.D.N.Y. 2017).  Both of those cases involve subpoenas that
were broad in scope and sought discovery for general purposes,
not just impeachment materials.

        While the trial subpoenas seek only potential
impeachment materials, courts -- when the trial subpoena seeks
only potential impeachment materials, courts in this circuit
have routinely refused to quash the subpoenas as untimely.  And
the following cases -- I reviewed the following cases and find
them persuasive:  *Joseph P. Carroll Ltd. v. Baker*,
2012 WL 1232957, at *1 (S.D.N.Y. Apr. 12, 2012).  In this case,
the court found that Baker was seeking documents to be used

N4RHBenC

1    solely for impeachment and rebuttal at the trial and "because

2    the subpoena is a trial subpoena that is limited in scope, the

3    application to quash the subpoena is denied."

4          I also looked at the *Malmberg v. United States* case,

5    2010 WL 186573, at *3 (N.D.N.Y. Mar. 24, 2010).  The Gross ——

6    I'm sorry, *Goss v. JLG Industries*, 2012 WL 12996214, at *1,

7    (W.D.N.Y. Oct. 22, 2022); and the *Upstate*

8    *Shredding v. Northeast Ferrous,* 2015 WL 12748319, at *4

9    (N.D.N.Y. Feb. 13, 2015.)

10          Because defendants contend this discovery is only for

11   cross-examination and impeachment purposes, as I mentioned, I

12   will not quash the subpoena on the basis that it seeks untimely

13   discovery.  Nor do I find that the subpoena is impermissible on

14   geographic limitation grounds.  "Federal courts have

15   universally upheld as consistent with the rule this production

16   mode in which the subpoenaed entity at all times acting with

17   100 miles of its office uploads documents for retrieval by

18   counsel for the party who issued the subpoena."  And that is

19   from the *Mackey v. IDT Energy* case, 2019 WL 24280, at *4,

20   (S.D.N.Y. May 7, 2019).  That is what defendants contend will

21   occur here.

22          Therefore, I am going to deny plaintiff's motion to

23   quash.  However, I do ask that defendants provide

24   plaintiff's counsel with copies of whatever they received

25   pursuant to the subpoena as soon as it is obtained.  I am not

N4RHBenC

1   ruling at this time as to whether the information may be used

2   at trial for impeachment purposes or otherwise.  None of us

3   knows what that material is.  I am simply ruling on the motion

4   to quash.  Once we get these materials and plaintiff has an

5   opportunity to review them, I will look at any objection as to

6   whether they are, for example, over ten years old for

7   convictions more than -- that are not for more than a year,

8   whether they go to issues of truthfulness or not ⸻ all of the

9   evidentiary issues that I will have to look at under Rule 608

10  or 609 as raised by plaintiff, as well as a Rule 403 objection,

11  if there is one made.  But I can't do that until I have the

12  documents before me and the parties can assess whether any of

13  those objections are appropriate.

14       So I'm just clarifying right now that because I am

15  granting this motion ⸻ because I am denying the motion to

16  quash, this does not mean that the materials will be used at

17  trial for impeachment, which is the only purpose to which they

18  are ⸻ defendants intend to use them.  And I will hear any

19  objections raised by plaintiff's counsel once we know what

20  those documents are, assuming that you even receive them before

21  trial, which you may not.  So we'll see.

22       So that is the motion to quash.  Next I wanted to

23  cover just a few other expectations that I have.  I understand

24  that the parties did their technology review already.  Is that

25  accurate?  OK.  I'm seeing nodding.  That's good.

N4RHBenC

1          So I thank you for that.  I don't want to have any

2     glitches with regard to technology.  So everyone knows how to

3     use the technology, how to publish items to the jury, etc., so

4     we should be good there.

5          Again, it goes without saying that I don't want any

6     wasted time.  I want limited sidebars.  Certainly, if we need

7     them, we'll have them.  I don't want speaking objections.

8     Certainly, you should object.  I'll ask for the ground.  You'll

9     tell me what the ground is in a few words or less, and I'll

10    rule.  If we need to go to sidebar, we will.  But, hopefully,

11    we won't have a lot of that because if there's a very

12    contentious issue we need to talk about, we would have talked

13    about it at one of the breaks and previewed it.  I hope

14    everything goes very smoothly as we present the issues.

15         As I mentioned, you need to have your witnesses here

16    and ready to go so that you have no lapse in time.  Each of you

17    will have a room outside the courtroom that will be your room.

18    There's two conference rooms on the left.  One can be for

19    plaintiffs; one can be for defendants.  So your witnesses can

20    sit in there and wait if they need to.  You can keep your items

21    there during the pendency of your trial.  Sometimes during

22    lunch I will have proceedings that will go on, so you may need

23    to take your items away from the conference tables and put them

24    back there, but those rooms will be yours.

25         I didn't think that I ever needed to say this, but I

N4RHBenC

1    am going to say it based on my history with the prior case.  Do

2    not use the jury room — do not go into the jury room.  I had

3    parties that went in and decided to have conferences in the

4    jury room during the pending trial.  So, again, didn't think I

5    needed to tell the parties that, but stick to the conference

6    room and the courtroom.  Do not go into the jury room.

7            All right.  Let's move to the — let's see.  Let's

8    move to a few of the things to confirm.  There is no deposition

9    testimony that's going to be introduced here, and therefore no

10   objections that I need to rule on with respect to deposition

11   designations.

12           Is that right, Mr. Soto?

13           MR. SOTO:  Correct, your Honor.

14           THE COURT:  And Mr. Pesin?

15           MR. KALMBACH:  That's correct, your Honor.

16           THE COURT:  Or Mr. Kalmbach, sorry.

17           MR. KALMBACH:  Kalmbach, yes.

18           THE COURT:  OK.  Great.  I see that the parties did

19   not submit a joint statement for the jury.  Again, that's

20   probably only because you weren't working off of my trial rules

21   at the time; you were working on earlier ones.  But, usually, I

22   have the parties submit a statement so that when I'm doing voir

23   dire and I tell the jury briefly what the case is about, they

24   have a bit of background.  I'm going to read you the one that I

25   think would be appropriate here, and let me see what you think.

N4RHBenC

1          This case has been brought by George Benn, the

2    plaintiff, against six correction officers:  Delroy Morrison,

3    Xavier McNeil, Matthew Landow, Jonathen Powell, Jermain

4    Phillips, and Gordon Noel.  Plaintiff alleges on February 19,

5    2015, the defendants violated his constitutional rights by

6    using excessive force against him while he was an inmate at

7    Rikers Island.  Each of the defendants deny any wrongdoing and

8    assert that their use of force was reasonable to gain control

9    of plaintiff.

10          Any objection there, Mr. Soto?

11          MR. SOTO:  Just one issue, your Honor.  We also do

12    have a failure to intervene claim.

13          THE COURT:  Yes.  Thank you.  I will work that in.

14          Mr. Pesin or Mr. Kalmbach, any issue?

15          MR. KALMBACH:  I don't believe so, your Honor.

16          THE COURT:  All right.  So what I will do, just to

17    make absolutely sure there's no issue, is I'll augment it a

18    little bit to reflect the failure to intervene claim, and thank

19    you Mr. Soto.  And I'll have my clerk just email that out to

20    you in the next day or so.  If there's any issues, you'll let

21    me know.  But hopefully it's fine, and that will be the

22    statement that I will use before we do any jury questioning.

23          OK, Mr. Soto?

24          MR. SOTO:  Thank you, your Honor.

25          THE COURT:  Thank you.  So that's on my to-do list.

N4RHBenC

1          All right.  I sent around a voir dire questionnaire as

2     Court Exhibit 1 to the parties.  I think there are a couple of

3     changes that I think I will need to make to it.  The first one

4     is Question 1.  I'm going to change it to a trial that is

5     expected to end by mid next week.  If we start Wednesday and I

6     tell them mid next week that should be an appropriate time

7     frame.  Is that right, Mr. Soto, in terms of your expectations

8     of trial time?

9          MR. SOTO:  Yes, your Honor.

10          THE COURT:  And Mr. Pesin?

11          MR. PESIN:  That's consistent with ours as well.

12          THE COURT:  Great.  Hopefully, we don't need all that

13     time, but I want them to feel happy about being done earlier

14     rather than angry about being here late.

15          The other thing I think I need to change is Question

16     11.  I will put the new counsel's names in here for the Law

17     Department.

18          Mr. Pesin, I had you with two last names, hyphenated

19     last name.  How do you prefer to be reflected here?

20          MR. PESIN:  Just Michael Pesin works.

21          THE COURT:  Will do.  I will do that.  So I will add

22     those two names to Question 11.

23          Are there any other changes —— we'll start with you,

24     Mr. Soto —— that I need to make to this jury questionnaire?

25     And let me —— just before I ask you that, let me just give you

N4RHBenC

1        a little background about what I did here.

2                 I took the questions that the parties proposed.  There

3        are many of them, so I tried to take and get a representative

4        sample that I thought could provide a basis for the parties to

5        exercise their peremptory and for-cause challenges.  Some of

6        the questions, such as what jurors do in their spare time or

7        some of those other questions, I don't really find relevant or

8        necessary.  However, I did include a few of those in the

9        individual questions, Questions 9 and 10, so that you get some

10       sense of that.  I'm just not going to go overboard there.

11                I think what I've done is selected enough questions to

12       get sufficient information under the *U.S. v. Nieves* case, which

13       is the more recent voir dire case of the Second Circuit,

14       58 F.4th 623 (2d Cir. 2022).  I did include questions regarding

15       relationships with corrections officers, those who've been

16       incarcerated, law enforcement generally, etc., and those are

17       Questions 15, 16, 17, 18, 19, 20.  I left out more

18       argumentative ones that had been presented.  I don't think

19       those are appropriate, but, again, that was my approach in

20       putting this together.

21                So, Mr. Soto, anything that we need to change with

22       respect to this?  Any objection?

23                MR. SOTO:  We have no objection, your Honor.

24                THE COURT:  Thank you.

25                Mr. Pesin or Mr. Kalmbach?

N4RHBenC

| | |
|---|---|
| 1 | MR. KALMBACH:  Yes, your Honor, we just have a couple |
| 2 | points.  For point 12 — |
| 3 | THE COURT:  Yes. |
| 4 | MR. KALMBACH:  — we would ask that subsection (b) is |
| 5 | changed to the actual name of the facility because Rikers |
| 6 | Island actually has a lot of different facilities on it.  So it |
| 7 | may be confusing to the jury. |
| 8 | THE COURT:  What is the name of the facility? |
| 9 | MR. KALMBACH:  The Otis Bantum Correctional Center. |
| 10 | We'll refer to it as OBCC in the trial. |
| 11 | THE COURT:  Can you spell Bantum. |
| 12 | MR. KALMBACH:  B-a-n-t-u-m. |
| 13 | THE COURT:  The Otis Bantum what? |
| 14 | MR. KALMBACH:  Correctional Center. |
| 15 | THE COURT:  I understand your suggestion.  I'm |
| 16 | concerned that they may not connect that with Rikers Island. |
| 17 | They may not know what the Otis Bantum Correctional Center is. |
| 18 | Mr. Soto, do you have a suggestion? |
| 19 | MR. SOTO:  Well, we share the same concern, your |
| 20 | Honor.  Maybe we could split the baby and note both terms. |
| 21 | THE COURT:  What about that, Mr. Kalmbach? |
| 22 | MR. KALMBACH:  I'm sorry.  Could you repeat that? |
| 23 | MR. SOTO:  Yeah, maybe we could split the baby and |
| 24 | note both terms, both Rikers Island and the official name for |
| 25 | the facility. |

N4RHBenC

| | |
|---|---|
| 1 | THE COURT:  I would imagine that people would want to |
| 2 | elicit if anybody has any familiarity or feelings one way or |
| 3 | the other with respect to Rikers Island. |
| 4 | MR. KALMBACH:  Yes, I think we'd want to avoid —— I |
| 5 | know that sometimes in the public there's certain connotations |
| 6 | with Rikers Island, and I think it would be more prudent just |
| 7 | to be as specific as possible because I don't think it's |
| 8 | necessarily relevant that it took place on Rikers Island rather |
| 9 | than in the facility, the Otis Bantum Correctional Center.  So |
| 10 | I think, just like for accuracy terms, because during the trial |
| 11 | it's going to be referred to as the Otis Bantum Correctional |
| 12 | Center, or OBCC, by the defendants in this case and I expect |
| 13 | plaintiffs as well, I think it would be -- at least in this |
| 14 | question to -- yeah, especially in this question to actually |
| 15 | list the Otis Bantum Correctional Center. |
| 16 | THE COURT:  I don't disagree, and I'm going to list |
| 17 | that center.  Is that center within Rikers Island? |
| 18 | MR. KALMBACH:  Yes, your Honor. |
| 19 | THE COURT:  OK.  So then I'm going to leave both of |
| 20 | them on there, only because I think it's important that if |
| 21 | anybody has any strong feelings one way or the other, that's |
| 22 | something that I think may be important for the parties to know |
| 23 | with respect to Rikers Island generally, but I will put the |
| 24 | other facility in there because that's an item that they will |
| 25 | hear about during the trial. |

N4RHBenC

| | |
|---|---|
| 1 | MR. KALMBACH:  Thank you, your Honor. |
| 2 | THE COURT:  Thank you. |
| 3 | OK.  Anything else, Mr. Kalmbach? |
| 4 | MR. KALMBACH:  Yes, your Honor.  Referring your Honor |
| 5 | to Question No —— |
| 6 | THE COURT:  Yes. |
| 7 | MR. KALMBACH:  —— just for accuracy, where it says "Do |
| 8 | you have any feelings or views about the New York City |
| 9 | Corrections Department," technically, it's the Department of |
| 10 | Correction. |
| 11 | THE COURT:  Thank you. |
| 12 | MR. KALMBACH:  Also referring your Honor to question |
| 13 | No. 18, we would ask that this question be removed.  I think |
| 14 | it's inflammatory and also already subsumed by the previous |
| 15 | question, Question No. 17, and again Rikers not being just one |
| 16 | facility. |
| 17 | THE COURT:  Mr. Soto, can I hear you on that. |
| 18 | MR. SOTO:  I believe that's a proper question, your |
| 19 | Honor, in that it's not completely reflected in Question |
| 20 | No. 17.  It gets directly to the point on any feelings any |
| 21 | prospective juror might have about that facility in particular. |
| 22 | THE COURT:  I agree.  I'm going to leave that in just |
| 23 | in case there is any issue that arises with respect to their |
| 24 | feelings about that facility, given that the Otis Bantum |
| 25 | Correctional Center is within Rikers Island. |

N4RHBenC

1          Mr. Kalmbach, anything else?

2          MR. KALMBACH:  One last point, your Honor.  Going back

3     to Question 11, and just as a general matter, the introduction

4     of plaintiff's counsel in the papers —— in this question, for

5     example, the plaintiff's counsel's firm or affiliated

6     organization is referred to as Advocates of Justice where, I

7     believe, the actual full name is the Advocates for Justice

8     Charter Attorneys, which is in the signature block.  So we

9     would just ask that the full firm name be included.

10          THE COURT:  Mr. Soto, any objection to putting

11     "Chartered Attorneys" after your name?

12          MR. SOTO:  No objection, your Honor.  That's our name.

13          THE COURT:  All right.  I will do that.

14          Anything else, Mr. Kalmbach?

15          MR. KALMBACH:  Not as to the voir dire, your Honor.

16          THE COURT:  Thank you.

17          All right.  So just to give you a sense of process,

18     the way that I do this is I give the questionnaire to all the

19     jurors, including the ones that are sitting in the back of the

20     room, and then we call —— well, so we'll have 14 jurors who

21     will be in the box, and there will be more in the back of the

22     room.  They will all have the questionnaire.  I'll give them a

23     moment to look at the questionnaire, then I will question the

24     first juror with respect to the questionnaire with each

25     question out loud, in case some people hear things better than

N4RHBenC

1    read things, so that they hear it at least once out loud and

2    the record is clear.

3           I will ask those questions of that first juror, and

4    then I'll ask the other jurors whether they have any "yes"

5    answers to Questions 1 through 29, and we'll address any "yes"

6    answers that they have.

7           There are certain questions that I will take the

8    parties -- the individuals over to sidebar to address,

9    including No. 1, which is their availability.  I find sometimes

10   that -- that once one juror says I have this event and we start

11   dialoguing about it, another juror has another event.  I

12   typically bring jurors over to the side to talk about that.

13   Certainly, if they raise any sensitive issues, I'll bring them

14   over to the side.  And then let me tell you the other ones that

15   I intend to bring them over to sidebar for.  One moment.

16          All right.  I generally would bring people over to

17   sidebar for Question 16 about questions about being

18   incarcerated or something like that, in case anyone is in any

19   discomfort in that regard.  Question 17, Question 18, 19, and

20   20, certainly 29 as well.  But that's generally how I would

21   proceed.

22          Any objections there, Mr. Soto?

23          MR. SOTO:  No objections, your Honor.

24          THE COURT:  Mr. Kalmbach?

25          MR. KALMBACH:  Thank you, your Honor.  I would just

N4RHBenC

1  ask that Question 15 be included in the list you just

2  mentioned.

3            THE COURT:  Let me hear from you a little bit more on

4  that.  The reason I'm hesitating is that people could have

5  plenty of interactions with the Department of Correction.  They

6  could have visited somebody in jail.  They could have done all

7  sorts of things that are not particularly sensitive, likely

8  wouldn't taint the jury.  So it's not one that I would

9  typically be bringing them to sidebar for.  But could you

10  articulate your concern a bit more.

11            MR. KALMBACH:  Yes, your Honor.  I think part of our

12  concern is that many interactions with the Department of

13  Correction do have to do with being incarcerated, and it's a

14  little different than, like, police department interactions,

15  for example, where there's police officers on the street every

16  day.  Interactions with Department of Correction tend to be

17  more specific, more meaningful to certain jurors, can bring up

18  certain feelings or experiences with certain jurors, and I just

19  think that we're concerned that that question in particular

20  implicates some of those concerns and could implicate some of

21  those experiences from the jurors.  It also raises the risk

22  that, in response to that question, jurors say something that

23  other jurors can't unhear, other prospective jurors can't

24  unhear.

25            THE COURT:  Thank you.  That's reasonable.  I'll make

N4RHBenC

1     a note there.

2              MR. KALMBACH:  Thank you, your Honor.

3              THE COURT:  All right.  So let's talk about jury

4     selection a little bit.  As I said, we'll go through and if

5     there are — the way we'll proceed with jury selection is, as I

6     said, I'll put 14 in the box, and we'll go through voir dire.

7     If somebody is dismissed for cause, I will then put another

8     juror in their spot so that by the end of voir dire of

9     everyone, we will have 14 qualified jurors sitting in the box.

10              Then the way we proceed is each — I'll call each

11    party over to sidebar together, and you can exercise your

12    peremptory challenges.  We'll start with plaintiff then

13    defendant, plaintiff then defendant, plaintiff then defendant.

14    You'll each have three.  If you don't wish to use one, you

15    don't need to use one, but you'll have the opportunity to use

16    three and to hear the one that has been exercised by your

17    adversary before that.

18              Then assuming you have six independent challenges,

19    we'll go down from 14 to eight, and we'll have eight jurors.

20    That gives us two jurors as a buffer in case someone gets

21    COVID, somebody -- some issue.  We'll still have two as a

22    buffer.  There are no alternates, as you know, so they'll all

23    deliberate and have to come to a unanimous verdict.  But if we

24    lose one because of health reasons, I think we're fine with

25    two.  We're not in flu or COVID season really.

N4RHBenC

1    　　　　But that's how I intend to proceed.  If you don't use

2    all your peremptories, you could end up with nine, but that's

3    my approach.

4    　　　　Mr. Soto, any issue with that approach?

5    　　　　MR. SOTO:  No issue with that approach, your Honor.

6    　　　　THE COURT:  Thank you.

7    　　　　Mr. Pesin or Mr. Kalmbach?

8    　　　　MR. PESIN:  No, your Honor.

9    　　　　THE COURT:  So that's how we'll proceed.

10   　　　　In terms of COVID, let me just cover the COVID

11   protocols that I will tell the jurors about, which is there are

12   no longer any formal COVID protocols here in the courthouse,

13   but I will inform them that they are welcome to wear masks if

14   they feel more comfortable; they're welcome not to.  We have

15   masks if anybody needs them.

16   　　　　If anybody tests positive for COVID, they should let

17   us know, and we'll go through the protocols that we need to go

18   through.  But we want everyone to feel safe and comfortable

19   here.  I have had an issue where somebody has said, for

20   example, that they're particularly susceptible or they have

21   long COVID, and I've allowed them to sit sort of in the back

22   row of the jury box instead of right next to people.  So we'll

23   make whatever accommodations we need to make, but generally

24   speaking, we'll try to make sure that everyone feels safe and

25   in whatever way they feel comfortable.  But, again, there are

N4RHBenC

1     no strict requirements regarding masks, and we'll proceed in

2     that way.

3              Any objection, Mr. Soto?

4              MR. SOTO:  None, your Honor.

5              THE COURT:  And Mr. Pesin or Mr. Kalmbach?

6              MR. PESIN:  No, your Honor.

7              THE COURT:  OK.  That's how we'll proceed there.

8              Let's move to the preliminary instructions that I put

9     forth in Court Exhibit 2.  These are the general ones that I

10    use for any trial that I have.

11             Any issue with anything in Court Exhibit 2, Mr. Soto?

12             MR. SOTO:  We have no issue, your Honor.

13             THE COURT:  Thank you.

14             Mr. Pesin or Mr. Kalmbach?

15             MR. KALMBACH:  One thing, your Honor.  My

16    understanding, we don't intend to use a demonstrative, so I

17    think we could probably take out subsection (c) of Section 3.

18             THE COURT:  Yes.  And I will repaginate this because

19    it appears to start on page 8.  Sorry about that.

20             MR. KALMBACH:  Thank you, your Honor.

21             THE COURT:  Yes, Mr. Soto, do you intend to have any

22    demonstratives?

23             MR. SOTO:  We do not, your Honor.

24             THE COURT:  OK.  Then I'll take out that instruction.

25    Thank you very much for that.

N4RHBenC

1          Anything else, Mr. Kalmbach?

2          MR. KALMBACH:  No, your Honor.  Thank you.

3          THE COURT:  OK.  Great.

4          So I'll use that.  I'll also be using, as I said, that

5     joint statement.  I'll get the parties' agreement on that

6     before we do.

7          All right.  Now let's quickly look at the motions *in*

8     *limine*.  The parties already had a conference with Judge

9     Preska, and I just want you to understand that I'm going to

10    adhere, as you would assume, to all of her prior rulings in

11    this case.  There were a few things that still seem to be

12    outstanding, so let me touch on them for a bit and see if we

13    need to get more information.

14         The first one is defendants' motion*s in limine* No. 4

15    and 7.  That motion —— and let me just set forth my

16    understanding and my follow-up question.  My understanding is

17    that in motion *in limine* 4, defendants move to preclude

18    plaintiff from introducing evidence of defendants' disciplinary

19    histories, prior or current lawsuits, or prior findings of

20    excessive force or false statements, as well as under motion *in*

21    *limine* 7 to preclude plaintiff from referring to unrelated

22    purported instances of police or correction officer misconduct,

23    events at Rikers Island generally, or using terms like

24    "testilying," "BLM," or "blue wall of silence."

25         I understand that plaintiff didn't oppose excluding

N4RHBenC

1    unrelated events and that they weren't intending to do that

2    anyway, but that they still may wish to introduce prior similar

3    complaints for excessive force to show motive and intent.  I

4    know defendant has an objection on that, and I understand that

5    the Court held previously that the plaintiff must make a

6    proffer in advance, outside the jury, before introducing any of

7    that, and the Court will then address it.

8         So now that we're on the sort of eve of trial, do we

9    have any of such evidence that's going to be used?  At the time

10   of the conference, plaintiff said that he doesn't have any

11   incident in mind, but is there any information that you intend

12   to use in this regard?

13        MR. SOTO:  The only information we might use —— and

14   this is due to recent research —— was there was a 1998 consent

15   decree entered into with CPSU, in particular, about excessive

16   use of force.  I need to review that more in detail to see if

17   there's anything relevant which we might introduce there, but

18   that's the only thing I could think of at this point, your

19   Honor.

20        THE COURT:  And it's a consent decree from 1998 with

21   whom?

22        MR. SOTO:  With CPSU, the unit that Mr. Benn was being

23   held in at Rikers, in particular, regarding complaints about

24   excessive use of force in CPSU.

25        THE COURT:  So what I would ask is that you —— if

N4RHBenC

1    you're continuing to look at that, that's fine, but I would ask

2    that you — I'm trying to figure out how we're going to decide

3    on any motions in advance of trial.  I don't want any pauses,

4    etc.

5              When do you think you'll have a decision on that?

6              MR. SOTO:  Hopefully, by middle of next week.

7              THE COURT:  OK.

8              MR. KALMBACH:  If I may, your Honor?

9              THE COURT:  Yes, Mr. Kalmbach.

10             MR. KALMBACH:  From the information that

11   plaintiff's counsel just offered about this proposed exhibit or

12   decree, we're going to have all sorts of issues with that, your

13   Honor.  It has nothing to do with these officers.  There's no

14   *Monell* claim here.  It sounds like a policy.  It was from the

15   late '90s.  This incident took place in 2015.  There's no — I

16   don't see any relevance to this whatsoever.

17             So I would just — making that record now, your Honor.

18   It sounds like it's a specific policy that plaintiff's thinking

19   of, so we would, at a minimum, ask that he identify that

20   specific policy.  And yes, your Honor, it's irrelevant — it's

21   irrelevant on its face.

22             THE COURT:  Thank you, Mr. Kalmbach.

23             So I think what we're going to do, in order to make

24   sure we can move smoothly here, is, Mr. Soto, if you intend to

25   use that, I need you to produce it to defendants and to the

N4RHBenC

1   Court by Monday.  And I know that's a little earlier than

2   you're intending, but if you could do that.  And we're going to

3   make a running list of what's coming in on Monday, but that

4   will be one of the things that will come in on Monday to give

5   defendants ample time to address it in whatever way they wish

6   to address it, raise whatever objections, etc.

7           So if that information is provided on Monday, then I

8   need any objections to it from the Law Department by Wednesday,

9   and then any reply by Friday.  That means I will have

10  everything I need to rule on those objections by the end of

11  next week, which will give me then, I guess, the weekend and

12  early the next week to make a ruling before we start trial.

13          Again, if you don't intend to use it, fine, but you

14  may want to do it just in case so that we have it fleshed out

15  and we're not in the middle of trial with having to go through

16  this back and forth in briefing.

17          All right.  So is that a clear schedule for everyone?

18          Mr. Soto?

19          MR. SOTO:  Yes, your Honor.

20          THE COURT:  OK.  Mr. Kalmbach?

21          MR. KALMBACH:  Yes, your Honor.

22          THE COURT:  All right.  You may want to discuss —— I

23  mean, the parties seem to be doing very well, I noticed when I

24  was reading the transcript of the proceeding before Judge

25  Preska, in sort of being clear and cooperative, not hiding the

N4RHBenC

1    ball.  So if, when you turn this information over, Mr. Soto, to

2    Mr. Kalmbach you can have a discussion, it may be that the

3    parties can reach some sort of agreement or have a clearer

4    understanding about what the disagreement is or whatever it was

5    before you embark on letter writing back and forth.  It may

6    help to have a discussion between you both, either to

7    crystallize the issues or to help convince one or the other

8    that your position is right.  I hate to have such letter

9    writing if one letter gets written and the other says, OK,

10   you're right.  So just maybe try to have a conversation before

11   you start writing letters.  That's a suggestion.

12            Motion *in limine* 9, in my understanding, that is

13   defendants seeking to preclude plaintiff from using Department

14   of Correction policies or directives, in large part because the

15   investigation didn't find any violations of those policies.  I

16   understand that the Court previously held that plaintiff can

17   ask about the policies as long as they proffer in advance of

18   asking about them outside of the presence of the jury and let

19   the Court know if there's any disagreement.

20            Have the parties had any conversations about this thus

21   far, or is that your understanding as well, Mr. Soto, of how

22   we'd proceed?

23            MR. SOTO:  We haven't had a discussion about this

24   particular point, your Honor.

25            THE COURT:  Do you still intend to ask those

N4RHBenC

1    questions?

2         MR. SOTO:  We don't plan on asking any particular

3    questions on that matter right now, but that is, of course,

4    subject to change.

5         THE COURT:  Sure.  All right.

6         What I'm telling you now is that if you do intend to

7    go into that area, please preview it and make sure that we have

8    the discussion that was contemplated by Judge Preska, meaning,

9    the proffer in advance before the jury, so that I can make any

10   decisions I need to make.  Please do that during one of the

11   breaks or during the lunch and not during a sidebar.  So we're

12   not going to, I'm going to ask this question, let's go to

13   sidebar, let's talk about it.  Let's handle that as one of the

14   issues that we need to talk about during a break if you do

15   intend to go there in accordance with Judge Preska's ruling.

16        OK, Mr. Soto?

17        MR. SOTO:  Yes, your Honor.

18        THE COURT:  Thank you.

19        Mr. Kalmbach, does that work for you?

20        MR. KALMBACH:  Yes, your Honor.  Thank you.

21        THE COURT:  OK.  Great.

22        Then motion *in limine* 15, defendant sought to preclude

23   plaintiff from testifying or arguing that plaintiff should not

24   have been extracted from his cell.  I understand that the Court

25   held that plaintiff can ask about the reason for the

N4RHBenC

1    extraction, and then the Court will entertain a limiting

2    instruction if one is proposed from the defendant.

3          Do you have such an instruction, Mr. Kalmbach or

4    Mr. Pesin?

5          MR. KALMBACH:  We don't have a specific instruction

6    right now.  We can certainly provide one.  But our position ——

7    sorry, I'm just reviewing that.

8          THE COURT:  Sure.  Take your time.

9          MR. KALMBACH:  Your Honor, I believe our motion on

10   this point proposed —— I'm pulling it up right now —— but

11   proposed —— jury instruction on this matter.  Let me check one

12   more thing.  Oh, wait.

13         THE COURT:  I think in the --

14         MR. KALMBACH:  I may be thinking of --

15         THE COURT:  No, I think you're right.  I think I saw

16   in the transcript before Judge Preska an instruction that says

17   "The reason for the extraction is not relevant to the issue of

18   whether the force used when the extraction was performed was

19   excessive or not."  Is that what you're thinking about at

20   page 30?

21         MR. KALMBACH:  I believe that's what I'm thinking

22   about, your Honor.  I mean, so on that point, I believe Judge

23   Preska denied our motion for that, our request for that

24   instruction.  And I think my understanding is that Judge

25   Preska's concern went to instructing the jury that it was

N4RHBenC

1    lawful, where we would at least want something along the lines

2    of — and I don't know where your Honor would wish to put this

3    — but that the lawfulness of the extraction isn't at issue.

4          Our concern here is that this is going to be kind of a

5    sideshow for the jury.  The determination as to whether or not

6    plaintiff — it was proper to remove plaintiff from his cell is

7    not an issue in this trial.  I think it will become a trial

8    within a trial, and the jury will — to the extent that the

9    jury buys the argument that the officers should have never been

10   in there in the first place, then it would lead to — high risk

11   of leading to a conclusion that anything that happened in that

12   cell was unlawful on that basis.

13         THE COURT:  I hear your argument, but I'm looking at

14   Judge Preska's order.  This is her order at ECF No. 193.  This

15   is a written order after the conference, and it says:  "On

16   motion *in limine* point 15, which seeks to preclude plaintiff

17   from testifying or arguing that defendants should not have

18   extracted plaintiff from his cell, that motion is denied.

19   Counsel may propose a curative instruction."

20         So I think that that's already been ruled upon, and

21   where we are now is whether there is an appropriate instruction

22   that you think should be given.  So what I would ask is that

23   you think about if there is such an instruction that you would

24   propose and that would be provided — and I'd like you to

25   discuss that with Mr. Soto and provide the Court with any such

N4RHBenC

```
1    instruction on Monday.  This is on our Monday list.  And it
2    should come in the form of a joint letter which provides the
3    instruction, and either that Mr. Soto and Ms. Armstrong agree
4    with it or, if there is any disagreement, their disagreement or
5    their objection will also be included in that letter so that I
6    can rule on that curative instruction.
7              MR. KALMBACH:  Thank you, your Honor.
8              One more point on this:  I don't have the actual
9    transcript of the last pretrial conference in front of me, but
10   I think our counsel -- or prior defense counsel actually
11   proposed an instruction along the lines of the Court simply
12   saying to the jury the reason for the extraction is not
13   relevant to the issue of whether or not the force was used when
14   the extraction was performed was excessive.
15             THE COURT:  Yes, I see that instruction.  So that may
16   be the one that you're proposing, and then you'll talk about it
17   with Mr. Soto and Ms. Armstrong and see if that's an acceptable
18   one and just let me know when you're proposing that it would be
19   given.  Again, if the parties can agree on that, that would be
20   fine, and that seems to be consistent with what Judge Preska
21   anticipated with the proposal of the curative instruction.
22             So see if there's agreement, and if there's not,
23   you'll reflect that in the May 1 letter -- or the Monday
24   letter.
25             MR. KALMBACH:  Understood, your Honor.  Thank you.
```

N4RHBenC

1          THE COURT:  Thank you.

2          Then, finally, the last motion *in limine* is motion *in*

3    *limine* 16.  Defendants sought to preclude plaintiff from

4    testifying that he sustained injuries to his wrists or ankles.

5    I understand that Judge Preska denied that motion for now and

6    allowed the defendants to take a one-hour deposition.  I'm just

7    now asking the parties if that happened and where we are now

8    with respect to that issue.

9          Mr. Soto?

10          MR. SOTO:  Your Honor, deposition did take place on

11    that issue on March 8, 2022.  I provided the transcript to

12    Corporation Counsel.  I don't know what their position is, if

13    they're going to renew that objection, but you should also be

14    aware that Judge Preska had reserved judgment on two of our

15    proposed trial exhibits that were marked in the JPTO as

16    Exhibits 4 and 5 pending -- they were exhibits from New York

17    City Hospitals referencing those very injuries that we wanted

18    to introduce, just like the exhibits we got that pertain to the

19    nose injury.  But that deposition was held, your Honor.

20          THE COURT:  Can I hear from defendants about your

21    position with respect to that motion.

22          MR. KALMBACH:  Yes, your Honor.  Our position remains

23    the same.  That deposition was held.  Plaintiff was very vague

24    as to how that injury occurred, what the exact injury was.  So

25    I think, while the deposition was held, it wasn't ——

N4RHBenC

necessarily cured the issues that we had in the first place, as

far as knowing even what these injuries were, what caused the

injuries.  And I'll note that specific with —— specifically as

to the medical records that were originally listed in the JPTO

as Exhibits —— Plaintiff's Exhibits 4 and 5, we would also —— I

mean, we take issue with both of those exhibits.

First of all, the exhibit -- it would be Exhibit 5, is

a medical record from July 3 of 2015, several months after this

incident, and that medical record appears to refer to an

incident that is not related to this case at all.  It appears

to relate to an incident in which OC spray was used, pepper

spray, and that, obviously, did not happen in this incident.

So that medical record should not come in and, I think, just

goes to show that these injuries —— again, there's no evidence

that they were tied to this incident at all.

And then there's also —— which was medical record

identified as Plaintiff's Exhibit 4, that does mention —— it

says "Patient complains of bilateral wrist pain and ankle

pain."  Just to clarify, that is a medical record from the

middle of March, almost a month after the incident, and it does

not give any reference at all to the cause of this injury, this

purported injury.  It doesn't give any indication that the

injury was sustained in relation to any incident with

Department of Correction officers, certainly not from February.

And also note that in the deposition, plaintiff testified that

N4RHBenC

1    the injury to his wrist was specific to his left wrist.  The

2    fact that this note says that plaintiff complains of bilateral

3    wrist pain suggests that it may be totally unrelated to this

4    incident.

5            And our concern is just that these medical records

6    were reviewed.  Plaintiff saw that he had these ankle injuries,

7    wrist injuries and is now tying them to this incident, where

8    they were never discussed at his original deposition, they were

9    never disclosed in response to interrogatories, they were never

10   disclosed ── or they weren't listed in the complaint where a

11   broken nose was specifically listed in the complaint.  So I

12   think that pretty much sums up our position on this.

13           THE COURT:  OK.  Thank you.

14           What I'm going to do, since I haven't seen ── since

15   I'd like to see that information more clearly is I'm going to

16   create a bit of a new process, and we're going to talk about

17   it.  But now we're going to move our joint letter to Wednesday,

18   and we'll go back and I'll talk about why.

19           In that Wednesday letter, next Wednesday, if you

20   have ── I'd like both parties' position on the motion *in limine*

21   with respect to the injuries to wrists or ankles, including

22   Exhibits 4 and 5.  And I'm moving the letter to Wednesday

23   because that gives the parties a chance to talk about this and

24   narrow whatever issues you have.  And you'll reflect in this

25   joint letter, Mr. Kalmbach, any motion that remains after your

N4RHBenC

1  discussions, and Mr. Soto or Ms. Armstrong will reflect their

2  position in that letter as well.  And then I'll have both

3  parties' position, and I can make a ruling before we start

4  trial.

5          So that will be in the Wednesday letter.  In that

6  Wednesday letter, you should also include that curative

7  instruction that we had talked about before.  So instead of

8  Monday, that will be Wednesday.

9          And my clerk will remind me if there was something

10 else that the parties are getting back to me so that I can make

11 sure this is as efficient as possible.

12         Right.  The consent decree is being turned over on

13 Monday, and therefore, I think -- and the parties should have

14 again a discussion.  So instead of having Wednesday and Friday

15 responses, let's just put it in that joint letter for Wednesday

16 so that you'll have it by Monday, and then on Wednesday I'll

17 have the position of defendant and plaintiff with respect to

18 the introduction of that consent decree, and then I can rule in

19 advance.

20         While we're going through the rest of this, my clerk

21 will check and see if there's anything else on the list so that

22 we can be as efficient as possible.  But so far we have a

23 Wednesday letter, joint letter, that's going to include several

24 topics.

25         Let's see.  Speaking of the exhibits, other than prior

N4RHBenC

1    Exhibits 5 and 4, which I guess you will discuss and determine

2    whether there's any objection to those, and I will rule on

3    those prior to trial.  I have an exhibit binder of Exhibits 1

4    through 12 from plaintiff.  And then defendants, I understand,

5    only have, essentially, Exhibit 1, which overlaps both parties.

6    And I think that these are a reflection of the rulings that

7    Judge Preska made and that there are no further objections to

8    these exhibits.

9              Is that right, Mr. Soto?

10             MR. SOTO:  Yes, your Honor.  And just for point of

11   clarity, I could give you a key right now of which exhibits

12   refer to the exhibits that Judge Preska ruled on from the JPTO,

13   if that helps clarify things for you.

14             THE COURT:  Well, I'm not sure I need to.  I did do

15   that effort, but it looks like the ones that are listed here ⸺

16   I'll ask Mr. Pesin or Mr. Kalmbach, 1 through 12, there's no

17   objections to the new exhibits that we have, 1 through 12, is

18   that correct?

19             MR. KALMBACH:  That's not entirely correct, your

20   Honor, because some of those exhibits, or all of them, were

21   listed in the original JPTO, and we did list and note our

22   objections to those exhibits.  Some of the objections, for

23   example, to the use of force reports and witness reports are

24   limited to just laying a foundation for relevance, if that

25   makes sense.  And to the extent such foundation is laid, then

N4RHBenC

1    we wouldn't object to those exhibits coming in.

2              As far as the medical records, we did assert Rule 403

3    objections to that and to all of the medical records.  That

4    objection lies in — there's a few reasons:  One, because

5    plaintiff has not listed a competent witness for those medical

6    records to come in.  There is highly technical medical jargon

7    in those medical records.  I don't think that plaintiff or any

8    other witness that plaintiffs listed is competent to explain to

9    the jury what those mean.  And if those are just sent back to

10   the jury, then we're going to have an issue of the jury trying

11   to parse through these medical records and not understand what

12   they mean, have issues with speculating as to what certain

13   terms mean.

14             There's highly technical, like I said, medical jargon,

15   maybe seems more serious than it actually is because there's

16   fancy words.  Also, without a competent witness to explain the

17   records, we're deprived of any meaningful cross-examination as

18   to the contents of those records.  So that's where our 403

19   objection relies to the medical records.

20             THE COURT:  Before you keep going, Mr. Kalmbach, I

21   think you've answered my question, which is I thought Judge

22   Preska had resolved the issues with respect to the exhibits and

23   that I had a full exhibit binder of unobjected to exhibits, but

24   it doesn't sound like that's the case, and that's fine.  I know

25   some were taken out based on her rulings but some remained, and

N4RHBenC

1   it sounds like there are still objections to the ones that

2   remain.

3          So because I want things to move as quickly through

4   trial as possible, let's go through those.  But before we do,

5   we might need to take a break.  So sounds like we'll have to go

6   through 12 exhibits, and I'll have to give you my rulings.  So

7   let me see if there's anything else we need to cover.

8          MR. SOTO:  If I may, your Honor?

9          THE COURT:  Yes, Mr. Soto.

10          MR. SOTO:  I believe Judge Preska ruled on the trial

11   exhibit objections when she ruled on the motions *in limine*, and

12   that's reflected in her order.

13          THE COURT:  Yes, that's what I'm going to want to hear

14   from the defendants on.  I know that she ruled, for example,

15   that the use of force reports — and I'm happy to hear

16   otherwise — my understanding was that she ruled that those

17   could come in, just not investigative summaries.  I assume that

18   the particular officer would be able to authenticate and lay a

19   foundation for each of those.

20          So we'll talk about those in a minute, but it was my

21   understanding that some of these were ruled on, Mr. Soto,

22   you're right.  So we'll do that when we go through

23   individually.  But before we move to exhibits, again, let me

24   see if there's anything else I need to talk to the parties

25   about.

N4RHBenC

1            There's two other things, so why don't we get those

2     taken care of, then we'll take a short break, and then we'll

3     come back to exhibits.

4            The first thing is the jury instructions.  Defendants

5     contend that the evidence won't show that punitives are

6     appropriate to charge here, and we'll deal with it as it comes.

7     But the parties have given me alternate approaches to a

8     punitive damages charge, and I note that each party seems to be

9     covering the same concepts, but there's alternate language

10     that's being proposed.  So what would be helpful to me is if

11     either of the parties are working from, say, a standard charge

12     or can annotate theirs, that would be helpful.  I assume you

13     took it from a standard charge.  One of you may have taken it

14     from a different standard charge.  Essentially, can you include

15     in that Wednesday letter the source for your punitive damages

16     charge so that I can evaluate both parties' source and see

17     which is more appropriate.

18            Then in the Wednesday letter, Mr. Kalmbach or

19     Mr. Pesin, can I have some case law or an idea of the case law

20     that you're going to rely on to exclude -- or to not send

21     punitive damages to the jury?  It seems that in this case

22     there's an allegation that he was beaten up by officers and his

23     nose was broken, and it seems like a factual issue to me as to

24     whether that was done maliciously or not, etc.  But if there

25     are particular cases that you're going to rely on to show that

N4RHBenC

1    punitives should not be charged here, if you could give me a

2    preview of those on Wednesday, that would be helpful so I can

3    start thinking about it in advance.  I'm inclined to charge the

4    punitive damages, but maybe you have some wonderful authority

5    that you're going to point out to me that's going to change my

6    mind.

7            And then, finally, Judge Preska ruled on emotional

8    distress damages and ruled that only garden variety emotional

9    distress damages would be available, and I just wanted to

10   confirm that the charge on page 23 of the joint charge is the

11   charge on garden variety emotional distress damages.  That

12   paragraph says, "In addition to compensation for physical

13   injuries, you may award reasonable monetary damages for the

14   following: emotional damages such as shame, embarrassment,

15   ridicule, anxiety, injury to reputation, mental anguish,

16   emotional distress, pain and suffering."

17           So I have that, but I just want to make sure that

18   there's not any changes or additional language that needs to be

19   included, given that those instructions were provided before

20   Judge Preska gave her ruling on a limitation to garden variety

21   emotional distress damages.  So I'd like in that Wednesday

22   letter if either party has any additional changes or

23   augmentation to the jury charge that has been provided already

24   with respect to garden variety emotional distress damages,

25   given Judge Preska's ruling.  I may have all that I need and

N4RHBenC

1   the parties may agree that we're fine, but that ruling came out

2   after the parties presented their proposed jury instructions,

3   and I just want to make sure that the parties don't think that

4   anything needs to change with respect to that charge given that

5   ruling.

6          Then I said finally, but I have one more.  I think in

7   the charge, if I'm not mistaken, that plaintiffs have an

8   objection to a standard multiple claims and multiple defendants

9   charge that I typically give in cases like this.  That charge

10  says:

11         "Plaintiff alleges claims against each of the six

12  defendants.  You must be careful to impose any damages you may

13  award on a claim solely on the defendant or defendants who you

14  find to be liable on that claim.  Although there are six

15  defendants in this case, it does not follow that if one is

16  liable, the others are liable as well.  Each defendant is

17  entitled to a fair, separate, and individual consideration of

18  the case without regard to your decision as to the other

19  defendant.  If you find that only one defendant is responsible

20  for a particular injury, then you must impose damages for that

21  injury only upon that defendant.

22         "Nevertheless, you might find that more than one

23  defendant is liable for a particular injury.  If two or more

24  persons unite in an intentional act that violates another

25  person's rights, then those persons are jointly liable for the

N4RHBenC

|    |                                                               |
|----|---------------------------------------------------------------|

1     acts of each of them.  The law does not require the injured

2     party to establish what portion of a charge was caused by

3     defendant that you find liable for that injury."

4          Mr. Soto or Ms. Armstrong, can you help articulate

5     your objection to that just so I can consider it as I'm putting

6     together the jury charges?  Maybe you don't have an objection

7     to that.

8          MR. SOTO:  I don't think we have an objection to that

9     at this point, your Honor.

10          THE COURT:  OK.  That's what I thought.  Thank you.

11          All right.  Let's, before we break, talk about

12     witnesses really briefly.  I have your witness list.

13          Mr. Soto, do you still plan to call Sandra Murray?

14          MR. SOTO:  At this point not, your Honor.

15          THE COURT:  OK.

16          MR. SOTO:  We'll probably just have the seven

17     witnesses, the named defendants and Mr. Benn, testify.

18          THE COURT:  So you're going to call defense witnesses

19     on your case?

20          MR. SOTO:  Yes, your Honor.

21          THE COURT:  And you understand, Mr. Kalmbach and

22     Mr. Pesin, we're not going to call witnesses again, right?  So

23     you'll be doing your examination at the same time following the

24     examination by Mr. Soto.  Is that clear?

25          MR. PESIN:  Yes, your Honor.

N4RHBenC

1         THE COURT:  Great.  So given that, let's just get a

2    little timing so that I can understand how this is going to

3    flow.

4         Mr. Soto, how long do you anticipate Mr. Benn will be

5    on the stand?

6         MR. SOTO:  For direct examination, probably an hour or

7    two.  One to two hours.

8         THE COURT:  One to two hours.

9         And for cross, Mr. Pesin?

10        MR. PESIN:  Approximately one hour.

11        THE COURT:  And Mr. Morrison, for your examination,

12   Mr. Soto?

13        MR. SOTO:  Depending on how hostile the witness is, I

14   mean, it could take anywhere from 45 minutes to two hours.

15        THE COURT:  We'll put one to two hours there.

16        And your examination, Mr. Pesin?

17        MR. PESIN:  Again, depends how much territory

18   Mr. Soto's able to cover, but I would put it at approximately

19   one hour as well, but that could be -- that could be a lot less

20   depending what on areas are covered on direct examination —— on

21   plaintiff's examination, excuse me.

22        THE COURT:  So for my planning purposes, then, if we

23   did an hour and a half for both —— an hour and a half for

24   plaintiff, hour and a half for defendant, would that be an

25   approximate time frame for each of the police officers,

N4RHBenC

1      Mr. Soto, or corrections officers?

2                MR. SOTO:  I think so, your Honor.

3                THE COURT:  Mr. Pesin, do you agree?

4                MR. PESIN:  I would, yes.

5                THE COURT:  OK.  That takes care of that.

6           So I'll use that to sketch out the time a little bit

7      just to make sure that we're going to finish up by that mid

8      next week promise that I'm going to make to the jury.  I think

9      we will, based on what you're showing me here.  So that seems

10     fine.

11          We're also going to be playing the video, I presume,

12     Mr. Soto?

13               MR. SOTO:  Yes, your Honor.  I plan on reviewing that

14     video with each of the witnesses, and that video is

15     approximately 20 minutes long.  For some of the witnesses, I

16     don't think we'll be reviewing the entirety of the video, but

17     the City may have different opinions on how much of it they're

18     going to run through.

19               THE COURT:  Thank you.  So that will be included in

20     your one and a half hours.

21          About how long do you think your openings will be?

22     And I know you haven't prepared them yet, but typically, what

23     do you think, Mr. Soto or Ms. Armstrong?

24               MR. SOTO:  Half-hour to an hour.

25               THE COURT:  OK.  And Mr. Pesin or Mr. Kalmbach?

N4RHBenC

1          MR. KALMBACH:  Your Honor, it will be well under half

2     an hour.  I don't see it taking longer than 15 minutes.

3          THE COURT:  All right.  So that helps me sketch

4     through the trial a little bit in terms of timing.  I think we

5     should be fine there.

6          Why don't we take a five-minute break, come back at

7     11:30, and we'll go through the exhibits.  Thank you all.

8          Court is adjourned for five minutes.  Thank you to the

9     court reporter.  Let's come back at 11:35.

10          (Recess)

11          THE COURT:  Broke my first rule.  It's 11:38 instead

12     of 11:35.  Sorry about that.  Let me follow up on a couple of

13     items.

14          First, I looked at -- again, I did rough math with my

15     clerk on timing.  With the times that you've provided with an

16     hour and a half for each officer, I think we're not going to

17     end in time.  So I think you may have chosen that number

18     because I suggested it, and I don't know that you're going to

19     need three hours with each police officer to go over the same

20     incident, but allocate your time appropriately.

21          I would just say that you should plan to try to get

22     this to the jury by Monday, latest Tuesday, to meet the

23     expectation.  The parties said this was a three- to five-day

24     trial, so I think that's reasonable so that we have time to

25     then charge and get them deliberating and all those things.  So

N4RHBenC

1   think about that as you're doing your examinations.  Again, we

2   have five hours of trial testimony a day, and that excludes the

3   breaks.  So we can revisit, but I don't want to make a promise

4   to the jury that I can't keep.

5           So, Mr. Soto, will that work?

6           MR. SOTO:  That works, your Honor.

7           THE COURT:  Thank you.

8           Mr. Pesin or Mr. Kalmbach?

9           MR. PESIN:  Yes, your Honor, of course.

10          THE COURT:  Again, think about that as we're

11  progressing through the witnesses, but with that time period in

12  mind, getting the case to the jury by Monday, latest Tuesday,

13  and then they'll have time to deliberate.

14          The other thing is I don't have exhibits, prior

15  Exhibits 4 and 5.  I think the parties only sent me the new

16  exhibit binder, so if you could just submit those.

17          MR. SOTO:  I have copies right now.

18          THE COURT:  I'll take them now.  I was going to say

19  you could submit them with your Wednesday letter, but I'll take

20  them now.

21          MR. SOTO:  May I approach, your Honor?

22          THE COURT:  Yes, please.

23          And we'll hear from the parties on any objections in

24  that Wednesday letter.

25          So we're going to go through two more items.  One is

N4RHBenC

1   the exhibit list, and then I want to go through the verdict

2   sheet very briefly with the parties so we can iron things out

3   there.  So let's look at the exhibit list that we have, and

4   we'll tick through things in an orderly fashion.

5       Exhibit 1 is the video of the incident.  Both parties

6   are suggesting it.  I assume no objection there, Mr. Soto?

7       MR. SOTO:  No objection, your Honor.

8       THE COURT:  And Mr. Kalmbach or Mr. Pesin?

9       MR. PESIN:  No objection.

10      THE COURT:  So that one comes in.

11      The Exhibit 2 and 3 are medical appointment notes, and

12  I believe I heard defendants' objections with respect to those.

13  It is compelling to me that under a hearsay objection, even if

14  they are a business record, you'd still need somebody who's

15  going to be able to lay a foundation for these records.  And I

16  will note that a couple of cases, the *Duchnowski v. County of

17  Nassau*, 416 F.Supp.3d 179, 183 (E.D.N.Y. 2018), that held that

18  neither plaintiffs nor the police officer defendants can

19  establish that medical records are what they appear to be or

20  that they conform to the requirements of either 803(4) or

21  803(6).  I'm also looking at the case called

22  *Djangmah v. Falcione*, 2013 WL 6388364, at *6 (S.D.N.Y. Dec. 5,

23  2013), which states that plaintiff could not lay the foundation

24  with testimony from himself, several members of his family, or

25  two eyewitnesses on the scene.

N4RHBenC

1          So, Mr. Soto or Ms. Armstrong, how do you intend to

2     introduce the medical records?

3          MR. SOTO:  As a first matter, your Honor, I would just

4     note it's our position for all these objections on the

5     remaining trial exhibits that these objections —— the City was

6     given the opportunity to raise those objections by Judge Preska

7     and to press them, and they did not, and they therefore waive

8     them.  I would point the Court to the transcript of the

9     proceedings that were held to review the motion *in limine* and

10    other document objections starting at 51:8, line 8, and then

11    going on for the next several pages.  The Court gave the City

12    ample opportunity to argue each of these objections, and the

13    objections are pretty much the same for all the remaining

14    documents.

15         We voluntarily withdrew one of the exhibits that the

16    plaintiffs objected to, which was marked at the time as

17    proposed Exhibit 3 in the JPTO, and they pressed their

18    arguments on Exhibits 4 and 5, which Judge Preska reserved on.

19    And then Judge Preska specifically addressed in her *in limine*

20    order also trial exhibit objections.  She noted which trial

21    exhibits have been thrown out.  And we would argue from that*,*

22    *expressio unius est exclusio alterius* in that since none of the

23    other documents that the City did not press their objections on

24    at that time are mentioned, that they're in.

25         That's our position.  I mean, any further development

N4RHBenC

1    on that I would -- I mean, I didn't prepare to address those

2    specific arguments for today, your Honor, because I thought

3    those exhibits were already in.

4                THE COURT:  Thank you.

5            I will admit that I too thought that the exhibit

6    issues were resolved.  For example, I saw on page 17 of the

7    transcript Judge Preska excluded the investigation or findings

8    of the investigation, but, and I quote, "The proper documents

9    would be the use of force reports which, as counsel has pointed

10   out, the individual defendants filled out themselves."  So I

11   thought that ⸺ I too, looking briefly ⸺ and I could look more

12   closely if I need to ⸺ thought that the exhibit objections

13   were already resolved in the conference before Judge Preska.

14   And I'm looking at also her order, document 193, where she

15   talks about her rulings with respect to Exhibits 3, 7, 9, and

16   then reserving on 4 and 5, which is why I thought I was

17   receiving a full copy of exhibits to which all objections had

18   been resolved.

19           Mr. Kalmbach or Mr. Pesin, can you direct me somewhere

20   else?

21               MR. KALMBACH:  Thank you, your Honor.

22           I just want to be clear, our objections to these

23   exhibits are how they're coming into evidence to make sure

24   there's a foundation laid for relevance.  In the last pretrial

25   conference transcript, the Court asked Mr. Arko, the prior

N4RHBenC

1    attorney on this case, are there any serious objections to the

2    documents that are proffered?  Our interpretation of that is

3    that we weren't waiving, necessarily, our simple —— not

4    authenticity, foundational objections to those exhibits.  That

5    was to talk about more serious objections as to, like, the

6    actual substance of certain documents, things of that nature.

7         Here, our objections to these are just foundational

8    for relevance; for example, the use of force reports, the

9    defendant officers can lay the foundation for those.  So I

10   don't know that I would necessarily refer to that as, like, a

11   serious objection insofar as we're just wanting to make sure ——

12   I don't think that anywhere we waived objections to exhibits

13   because it is still important, right, that every exhibit is

14   entered through a witness; they're not just thrown to the jury.

15   And being entered through a witness, the witness has to be able

16   to lay the foundation.  And for documents such as use of force

17   reports that are written by the witnesses, they can lay that

18   foundation, and we're not going to have a problem with that.

19        THE COURT:  I see.  So your objections are only to

20   relevance and laying a foundation.  So the police reports,

21   let's say Exhibits 4 through 12, which are all the reports

22   prepared by the police officers, as long as the police officers

23   can authenticate them and say, yes, this is my report, then

24   your position would be that they then come in.  Is that right,

25   Mr. Kalmbach?

N4RHBenC

1          MR. KALMBACH:  Yes, your Honor.  Through the officer

2     that wrote the actual report.

3          THE COURT:  Sure.

4          Mr. Soto, do you have any issue with that?

5          MR. SOTO:  None, your Honor.

6          THE COURT:  OK.  So then that makes it easier.  And I

7     agree with you, exhibits shouldn't just be thrown in to a jury;

8     they should be introduced in some sort of logical way.

9          So 4 through 12, that takes care of.

10          Then with respect to the medical appointment notes, 2

11     and 3, then, obviously, since they would be relevant to his

12     injuries that he had, you're suggesting that if Mr. Benn then

13     introduces and says what they are, then they would come in

14     because they would be authenticated that way, Mr. Kalmbach?

15          MR. KALMBACH:  Your Honor, our position on this is I

16     don't believe that plaintiff is qualified to lay the foundation

17     for relevance for those records because they don't just note

18     plaintiff has a knee —— a broken nose or something like that.

19     They're filled with medical jargon and medical terms that are

20     going to be going to the jury, and the jury's going to see

21     these entire documents.  And it's important that they're able

22     to understand every piece of evidence that's going to them,

23     which is every sentence, every word in that document, and I

24     don't believe that plaintiff is able to himself lay the

25     foundation for such documents.  And I would refer to the cases

N4RHBenC

1  that your Honor listed that police officers and laypeople

2  aren't qualified to make those —— or to lay that foundation.

3          THE COURT:  What's your response to the —— I mean, you

4  saw the witness list —— not you, the Law Department saw the

5  witness list prior to the conference before Judge Preska, and

6  if there was —— I would consider this a serious objection to

7  medical records coming in because they can't meet the

8  exceptions to hearsay without having an appropriate foundation.

9  That could have been raised before Judge Preska.  That doesn't

10  seem like a relevance objection.  It seems like a significant

11  objection to which she requested the parties to raise, and it

12  was not raised.  Again, the witness list has not changed.  So

13  there was nobody on plaintiff's witness list that would fit the

14  category that you're describing here today.

15          What's your response to that?

16          MR. KALMBACH:  Could I just have one moment to confer

17  with counsel?

18          THE COURT:  Absolutely.  Take your time.

19          MR. KALMBACH:  Thank you, your Honor.

20          (Counsel confer)

21          MR. KALMBACH:  We're ready, your Honor.

22          THE COURT:  One moment before you do that.

23          Mr. Soto, can you give me that page again from the

24  transcript where Judge Preska talked about any serious

25  objections to exhibits.

N4RHBenC

1          MR. SOTO:  You want the citation, or do you want the

2     actual transcript?

3          THE COURT:  I have the transcript.  Just give me the

4     page.

5          MR. SOTO:  It's page 51.  And I believe the discussion

6     started at 51, line 7, and then we went on for several pages

7     discussing document objections.

8          THE COURT:  OK.  Thank you very much.

9          Mr. Kalmbach.

10         MR. KALMBACH:  Thank you, your Honor.

11         At this point, as far as why this wasn't raised

12    before, I don't want to speak on behalf of Mr. Arko.  I will

13    say that I apologize that it wasn't raised before.  The issue

14    still stands about what should and should not go to the jury.

15         I would just ask for, if your Honor's amenable to it,

16    giving us some time to confer with plaintiff's counsel about

17    possible redactions, about other issues, and if there's any

18    issues as to those that we cannot resolve, then we can put it

19    in the Wednesday letter as well.

20         THE COURT:  I think that's fair.

21         Mr. Soto, would you be amenable to having some

22    discussions about this?  Because we perhaps can resolve if

23    there's an issue with an unrelated report or something that's

24    not relevant to your case.

25         MR. SOTO:  I'd be amenable to that discussion, your

N4RHBenC

1    Honor.  One thing I would just like to raise.  Oftentimes when

2    something goes to trial and we're wrangling over the exhibit

3    list, a lot of times these basic objections are on authenticity

4    and authentication, and they get waived because you don't want

5    to go through the rigmarole of subpoenaing a doctor to come in

6    to authenticate the document.  I had assumed those issues had

7    been waived just based on the kind of discussion we had in

8    front of Judge Preska.  If I had known this was a serious

9    objection and this was going to be an issue, I would have

10   altered the witness list, and I would have subpoenaed each of

11   these documents to come in, an authenticated document that we

12   have no reason to believe is going to be inauthentic and

13   certainly isn't irrelevant.  They corroborate —— they

14   corroborate Mr. Benn's testimony about the injuries he

15   sustained on that day.

16          So if the issue is simply a hearsay objection and

17   authentication, we would have subpoenaed the doctors to come in

18   and give ten minutes of testimony to authenticate the

19   documents.

20          THE COURT:  Thank you.

21          Mr. Kalmbach.

22          MR. KALMBACH:  Thank you, your Honor.

23          I just want to be clear.  This isn't an authenticity

24   objection.  The records are certified.  It's a foundational

25   question about what and what should not go to the jury as far

N4RHBenC

1     as laying a foundation, relevance.  There —— as

2     plaintiff's counsel just mentioned, hearsay, there's some

3     hearsay within hearsay issues in there as far as certain

4     statements.

5            As far as plaintiff's counsel's reference to

6     subpoenaing doctors, I think that whether or not we raise these

7     objections earlier, that's something —— amending a witness list

8     is something that we would have opposed, depending on —— I'll

9     have to go back and look at plaintiff's Rule 26 disclosures.

10    Because if a doctor wasn't identified or any witness that could

11    explain these, then maybe, regardless of timing, amending the

12    witness list wouldn't have been proper.

13           But I think a discussion with plaintiff's counsel on

14    this will be productive.  And putting it in the Wednesday

15    letter, I think, is the best way to go.

16           THE COURT:  Why don't you do that.  Know that in your

17    discussions, I will look back at the record, but it was, as I

18    stated earlier, my understanding that all objections with

19    respect to exhibits had been resolved, if there were any,

20    especially significant ones, such as something like this,

21    before Judge Preska, and the opportunity was there to have that

22    conversation before Judge Preska.

23           So that argument, I am sympathetic to that argument.

24    I have not ruled exclusively yet, but I ask you to take that

25    into consideration when you have those discussions with

N4RHBenC

Mr. Soto about what comes in.

I do have one question.  Exhibit 2, which are medical records, it has on there a date — an altercation date on 2/20. I'm looking at the first page of the exhibit:  "Patient reports altercation on 2/20 and injury to his face."  I'm assuming this is the same injury.  It may just be a typo with respect to 2/19 or 2/20.

But there's not a different injury or a different incident that happened on 2/20 that year, is there, Mr. Soto?

MR. SOTO:  That's my understanding, your Honor.

THE COURT:  OK.  That's what I thought as well.

Mr. Kalmbach, any reason to believe there's another incident that occurred then?

MR. KALMBACH:  At this point I don't have any reason to believe that there was another incident on 2/20.

THE COURT:  Great.  Thank you.

Again, maybe my layperson's reading of that is incorrect, but I just wanted to have a little information there.

All right.  So the parties will talk about those medical records.  Again, I am sympathetic to if there was any issue here, it could have been raised earlier; plaintiff could have gotten the appropriate witness.  And I do see on the transcript that the Court invites any remaining document objections — and that's on page 51 of the transcript at docket

N4RHBenC

1    No. 197, page 51, line 8 —— and then various document

2    objections are handled by her.  So keep that in mind as you

3    guys are discussing those documents.

4         All right.  Finally, let's look at the verdict form.

5    I'm going to have my clerk give you a copy of one that I've

6    mocked up just to discuss with the parties.  I got,

7    essentially, sort of two verdict forms from the parties.  So I

8    did my best to put them together in a way that seems to make

9    sense.  I'm not going to ask you —— well, I will ask you what

10   you think of them, but certainly you're not —— let's see.

11        So one of the items I'd like the parties to talk about

12   real quickly is —— and I've included punitive damages here just

13   because we then all can look at it; we can decide whether it

14   gets charged or not.  But then we have compensatory damages

15   here, and I have them combined in Question 3 on page 3, as was

16   suggested by plaintiff, "Has plaintiff proved that he's

17   entitled to compensatory damages for excessive force and/or

18   failure to intervene," and then an amount here, and then

19   nominal damages if not an amount.

20        This is slightly different than what was suggested by

21   the City, but this is what plaintiff proposed, and I didn't see

22   an issue with it.

23        Mr. Kalmbach or Mr. Pesin, is there any issue with

24   proceeding this way?

25        MR. KALMBACH:  No objection, your Honor.

N4RHBenC

1          THE COURT:  All right.  That just helped me.  I'm just

2     trying to get as much done as possible before we start the

3     trial so that everything moves as smoothly as possible.

4          And I thank the parties.  I have to put this on the

5     record as well.  I've had several cases like this in the past,

6     and the parties were giving me what ostensibly seemed to be

7     joint filings, and they weren't really joint filings.  These

8     are truly joint filings.  I appreciate that.  You've noted your

9     limited objections.  It looks like you attempted to resolve any

10    disagreements and come to, in large part, consensual proposals

11    to me with your objections clearly noted so that I could rule

12    on them.  So I thank you for that.  The jury instructions and

13    the verdict form were very clear in that regard.  So thank you,

14    Mr. Soto.

15         MR. SOTO:  Just one point I'd like to add.  I just

16    noticed, just on all the questions, it appears Corrections

17    Officer Phillips has been left off.

18         THE COURT:  Well, that is a significant change.  So,

19    yes, of course.  Thank you.  What I'll do is I'll leave this

20    with you, and thank you for that correction.  If there are any

21    other main corrections, let me know in the Wednesday letter.

22         But the main difference I saw between the parties'

23    proposed verdict sheets were that combination on compensatory

24    damages and then the question about whether punitives are

25    charged or not.  We can deal with whether they get charged or

N4RHBenC

1    not, but I just put them here as to how they would get charged

2    if they were charged.

3           OK.  I think that that is all that I have on my list,

4    and my binder's now come apart, so it has to be all that I have

5    on my list.

6           Is there anything else, Mr. Soto, that we should

7    discuss today?

8           MR. SOTO:  Nothing from plaintiff, your Honor.

9           THE COURT:  Thank you.

10          Anything, Mr. Pesin or Mr. Kalmbach?

11          MR. PESIN:  Nothing further, your Honor.

12          THE COURT:  All right.  Well, I hope that this gives

13   the parties enough information to prepare for trial.

14          You have something else, Mr. Pesin?

15          MR. PESIN:  I'm so sorry, your Honor.

16          THE COURT:  No, take your time.

17          MR. PESIN:  Just a moment ago I spoke with Mr. Soto

18   about possibly nailing down an order of witnesses list.  Is

19   that something that the Court is amenable to do?

20          THE COURT:  Are the defendants all going to be here

21   because they're all on trial as defendants, or do they plan to

22   only show up for portions of the trial?

23          MR. PESIN:  So all defendants are available.  Two of

24   them need to have —— need to travel from out of state.  So the

25   reason we ask is because we will need to give them lodging

N4RHBenC

1    accommodations and figure out flights and some things of that

2    nature.  So depending on —— we've already adjusted the trial

3    schedule by a couple of days, which is fine, but it would be

4    helpful for travel accommodations and scheduling purposes if we

5    could figure that out.

6              THE COURT:  Seems reasonable.

7              Mr. Soto, any issue with that?

8              MR. SOTO:  Well, the only -- we're still consulting on

9    the strategic consideration of when exactly to call Captain

10   Morrison.

11             THE COURT:  OK.

12             MR. SOTO:  I believe he's one of the two that needs

13   accommodation on flying in.  I could probably provide a list by

14   tomorrow of everybody else in the order that we're going to

15   call them in, but we still haven't decided when exactly we're

16   going to call Captain Morrison.  And I would just ask a little

17   leeway while we review and prep with our client on when we can

18   make that determination.

19             THE COURT:  Mr. Pesin, is that what you need, or did

20   you need more than that?

21             MR. PESIN:  No, that should work, your Honor.

22             THE COURT:  Great.  You'll collaborate there.

23             I don't want to interfere with any party's strategic

24   determinations, but I do also think that it's helpful for

25   everyone to help the trial move smoothly that the parties know

N4RHBenC

1    and expect when the different witnesses are coming on.  So

2    please do try to have those discussions so that we can

3    facilitate that.

4           If there is -- and I'm going to check my instructions

5    that I have now to make sure that I have one regarding order of

6    witnesses in terms of instructing the jury that some witnesses

7    may be called, for example, on plaintiff's case who are

8    defendants' witnesses, or something like that.  I think I have

9    something on that, just to make sure everyone's clear.  But

10   otherwise, as I mentioned, they'll only be called once on the

11   case.

12          All right.  Mr. Pesin or Kalmbach, anything else?

13          MR. PESIN:  No, your Honor.  Thank you.

14          THE COURT:  No problem.

15          As I was saying before, my goal in having this lengthy

16   conference and resolving all these issues is to make the trial

17   proceed smoothly through.  If there is another issue that I

18   have not covered, please raise it for me as soon as possible.

19   We will have, as I said, those breaks before, during, and after

20   each trial day so that we can do that.  You'll have this

21   Wednesday letter where you can submit, if there is anything

22   that we haven't covered, although you have plenty of things to

23   put in that Wednesday letter anyway.  But a goal here is

24   preparation and an understanding as to how things will proceed

25   at trial so everyone can do their best work and put on their

N4RHBenC

1     best cases.

2              Well, I will see you all, then, on May 10 to start

3     trial.  Let's say right now that the parties will come at 8:30

4     on that day instead of 9:00, because it sounds like I will have

5     to rule on some of the items if there is anything to rule on

6     from the Wednesday letter, and that will give us a good hour

7     for me to give you my rulings on that before we start.

8              I'll look at the list that's provided.  I don't think

9     any of them were things that you needed rulings on any earlier

10    than the morning of trial, but I'll look at it and see.  Again,

11    I wanted everyone to have an understanding of what's coming in

12    and out as much as possible before trial begins, but I think

13    most of them can wait until that morning of.

14             Thank you again to the court reporter for her time.

15             Thank you, everyone.  I look forward to trying this

16    case with you, and Court is adjourned.

17             (Adjourned)

18

19

20

21

22

23

24

25